## MECCA LAND & EXPLORATION CO. v. SCHLECHT et al.

(District Court, D. Arizona. January 27, 1925.)

**1. Waters and water courses ☞89 — Land formed by recession of river before homestead entry of lands bounded by meander line held not accretion to surveyed tract.**

Where at the time of the government survey certain tracts of public land bordered on the Colorado river and were delimited by a meander line, but before their entry by homesteaders the river had receded and a large tract of arable land had been formed between it and the meander line, more than three times the size of the surveyed tracts, which land had never been officially surveyed which was not claimed by the entrymen, who received patents according to the survey and for the quantities shown thereby, the meander line constituted their boundaries, and a subsequent purchaser from them, after the new formed land had been taken possession of by the United States, protected by a levee, and included in an irrigation project, held not entitled to claim such land as accretions to the surveyed tracts.

**2. Reformation of instruments ☞3—Reformation of patent held not necessary in suit to determine boundary.**

Where a patentee has in fact received and is in possession of all the land described in his

patent, but claims more, on the theory that his boundary extends beyond a meander line shown by the survey, a denial of such claim constitutes a legal defense, and does not require a reformation of the patent.

3. **United States** $\Longleftrightarrow$**125—Suit against officers of government reclamation project to restrain leasing of homestead lands held not suit against government.**

A suit by grantees under mesne conveyances from homestead patentees to restrain managing officers of government reclamation project from asserting title to portions of patented lands and offering same for lease is not a suit against the United States.

In Equity. Suit by the Mecca Land & Exploration Company against W. W. Schlecht and Ray N. Priest, project manager and assistant project manager, respectively, of the Yuma Project of the United States Reclamation Service. Judgment for defendants.

Thomas D. Molloy and Robertson, Lindeman & Campbell, all of Yuma, Ariz., for plaintiff.

George T. Wilson, Asst. U. S. Atty., of Phœnix, Ariz., Oliver P. Morton, of Los Angeles, Cal., and John F. Truesdell, Sp. Asst. Atty. Gen., for defendants.

JACOBS, District Judge. [1] This case was submitted to the court upon an agreed statement of facts and tried without a jury. The case was set down for hearing and orally argued before the court at Prescott, Ariz., on the 4th day of August, 1924, and thereafter submitted on briefs, and the court has carefully considered the briefs filed on both sides. The facts are as follows:

The plaintiff is the owner of lots 2 and 3, section 12, township 10 S., range 25 W. G. and S. R. B. and M., except the east 30 acres of said lots 2 and 3; lots 8 and 9 of section 30, township 9 S., range 24 W. G. and S. R. B. and M., except the south 40 acres of said lots 8 and 9; lots 3 and 4 in section 18, township 9 S., range 24 W. G. and S. R. B. and M., except the north 15 acres and the southeast 10 acres of said lot 4 (10 chains north and south by 10 chains east and west in the southeast corner of said lot 4); lots 1, 2, and 3 in section 12, township 9 S., range 24 W. G. and S. R. B. and M.; lot 5 in section 5, township 9 S., range 24 W. G. and S. R. B. and M.

Plaintiff deraigns its title to said property through mesne conveyances from homestead patentees of said lands from the United States government, and said patents and the conveyances through which plaintiff claims title describe said lands as being bordered

4 F.(2d)—17

on the west by the meander line of the Colorado river. In 1874 an official survey and plat was made, approved, and filed in the United States Land Office of Arizona, which describes the meander line of the east bank of the Colorado river as the western boundary of said lands, and the survey and plat were correct in every detail, and the Colorado river did actually constitute the western boundary of the lands at that time.

Between the date of said survey and plat and the dates of the entries of said homesteads by plaintiff's predecessors in interest, a large tract of land was formed west of the meander line of the Colorado river as depicted on said plat, by recession of the waters of the river and by deposit of soil and other material by said waters during such recession, and the whole thereof is rich in soil and irrigable under the Yuma reclamation project. In the year 1903, and since said accretion land was formed, the government constructed a levee to the west of said accretion land to protect it from the wash of the river, and this accretion land had never been officially surveyed prior to the issuance of patents to said homestead entrymen.

At the time of the entries of said homesteads, which were more than 25 years after the survey of 1874, the river at the nearest point to the lands involved, except lot 8, section 30, was about one-eighth of a mile distant, and at far points was approximately 1½ miles away from the lands that were shown and measured on the government plat. In July, 1918, the defendants, on behalf of the United States Reclamation Service, advertised for sealed proposals for leasing certain described tracts of land, including portions of said accretion lands. Plaintiff thereupon filed this suit, alleging it to be the owner of all this accretion land, and asked that an injunction be granted restraining defendants from leasing said lands and from asserting or pretending to assert any right to lease the same or to place any person whomsoever in possession thereof.

The plaintiff contends that under this state of facts the meander line described in the government's patents to the entrymen does not constitute the boundary of the lands conveyed, but that the Colorado river now constitutes the western boundary, and that the plaintiff, by virtue of mesne conveyances from the patentees, is the owner of all the accretion land lying west of the meander line, amounting to about 900 acres.

The defendants contend that, inasmuch as this tract of accretion land was formed long before and existed at the time of the entries,

the entrymen, when they first went upon the land, had notice of that fact, and of the fact that the lands they were about to settle and purchase did not border on the river, and that therefore the meander line described in the plat constitutes the western boundary of their lands, and they did not acquire any riparian rights by reason of the purchase.

The claim of the plaintiff is better understood from an examination of the three maps attached to the agreed statement of facts and made a part thereof. These maps show the number of acres of the basic lands entered and the number of acres of accretion land claimed, as follows:

| | Basic Lands. Acres. | Accretion Land. Acres. |
|---|---|---|
| Lots 3 and 4, section 18 | 36.59 | 40.00 |
| Lot 2, section 17 | 39.99 | 32.00 |
| Lots 1 and 2, sections 20 | 52.62 | 270.38 |
| Lot 1, section 19 | .34 | 22.00 |
| Lots 2 and 3, section 19 | 48.75 | 290.00 |
| Lots 2 and 3, section 12 | 62.43 | 230.00 |
| Lot 5, section 5 | 5.29 | 11.00 |
| Total | 246.01 | 895.38 |

From the foregoing it will be seen that the total number of acres described in the patents to the entrymen, and for which they paid the government, amount to 246.01, and that the accretion land claimed by plaintiff in addition thereto amounts to 895.38 acres. In other words, the entrymen purchased and paid for 246.01 acres, and the plaintiff, as grantee of the entrymen, now claims 1,141.39 acres.

It does not appear that the entrymen ever asserted any claim, title, or right of possession to this accretion land from the time of the entries up to the time they conveyed. The claim of title is made by the plaintiff more than 15 years after the entries, and after the government asserted its rights and constructed the levee in 1903 as a part of its reclamation system in the Yuma Valley. They stood silently by and watched construction of these vast improvements, the government in possession, and then, just as the officers of the government are about to lease this land, in consummation of its project, plaintiff comes into a court of equity and asserts its claim of title for the first time.

In this case there is no question of a mistake on the part of the surveyor, as in the case of Horne v. Smith, 159 U. S. 40, 15 S. Ct. 988, 40 L. Ed. 68; nor of any fraud on his part, as in the case of Security Land & Exploration Co. v Burns, 193 U. S. 167, 24 S. Ct. 425, 48 L. Ed. 662; nor that the field notes or plat refer to or show any marsh or other land lying beyond the meander line depicted on the plat, as in the case of Niles v. Cedar Point Club, 175 U. S. 300, 20 S. Ct. 124, 44 L. Ed. 171; nor of two conflicting surveys, as was the case in Gleason v. White, 199 U. S. 54, 25 S. Ct. 782, 50 L. Ed. 87; but, by the agreed statement of facts, it appears that at the time the survey was made in 1874 the east bank of the Colorado river constituted the western boundary of the lands that were entered by and patented to the plaintiff's predecessors in interest. Had the plaintiff's predecessors in interest entered the lands under the conditions existing at the time of the survey of 1874, and at a time when the Colorado river actually constituted the western boundary of the lands, and the accretion land had been formed subsequent to their entries, there would be no question as to the title of the entrymen or their grantee, the plaintiff, to all of the accretion land described herein, as the case then would come well within the general rule "that, where a meander line is run, if lands are described as bordering on a stream or body of water, the meander line is not a boundary, but the waters themselves constitute the boundary, the meander line being intended to ascertain the approximate acreage which is to be paid for." Greene v. United States (C. C. A.) 274 F. 145, citing Railroad Co. v. Schurmeier, 7 Wall. 272, 19 L. Ed. 74; Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 808, 838, 35 L. Ed. 428.

These lands, however, were entered by plaintiff's predecessors in interest more than 25 years after the survey and plat made and filed in 1874, and it appears from the agreed statement of facts that, between the time of the survey in 1874 and the dates of the entries, this large tract of accretion land was formed to the west of the meander line, and that the whole thereof is rich in soil and irrigable under the Yuma Reclamation Project; that at the time of the entries the river at the nearest point to the lands involved, except lot 8, section 30, was from one-eighth mile to 1½ miles distant from the lands that were shown and measured on the government plats.

In Security Land & Exploration Co. v. Burns, supra, there was no lake near the spot indicated, and the court held that the meander line was the boundary. In this case, the Supreme Court seems to approve the language used in the trial court: "As is said in the trial court in this case, 'there must be some limit to the length courts will go in search of the water delineated on a

plat of survey with a meander line shown thereon. If the water were 10 miles away, it is certain that a claim to be bounded thereon would not for one moment be admitted."

In the case of Niles v. Cedar Point Club, supra, it appears that the surveyor stopped his survey at what he described as "marsh," and "impassable marsh and water," and the court held that the meander line was the boundary. In this case, the court says: "The United States sold only the fractional sections, received only pay therefor, an amount fixed by the number of acres conveyed, and one receiving a patent will not ordinarily be heard to insist that by reason of an error on the part of the surveyor more land was bought than was paid for, or that the government was offering for sale."

In the case of Gleason v. White, there were two conflicting surveys and patents, one issued to the plaintiff Gleason in 1878 and a swamp land patent to the state of Florida in 1885, and deed from the state to the defendant White. The patent to Gleason described a meander line of Biscayne Bay as the eastern boundary, according to a survey made in 1845. The patent to the state was based on a survey made in 1875, which showed a large tract east of the meander line in the survey of 1845. The court held the meander line to be the boundary of the Gleason tract. In passing upon the rights of Gleason, the court said: "It does not seem that he [Gleason] could have been mistaken as to the land that he was acquiring from the government, for he must have lived on it five years in order to have perfected his homestead. He could not have been ignorant of the large tract of land lying east of what was described in the plat of 1845 as lot 1. The official plat at the time of the patent was the plat of the survey of 1875. He was chargeable, as a matter of law, with notice of that plat. More than that, as the survey was at his instance, it is a reasonable assumption that in fact he knew what the lines of that survey and plat were. Under those circumstances, full justice is done if a patent title to lands outside his lands as shown by the plat of 1845 is sustained, for he is still protected in the tract bounded by those lines and amounting to 164.84 acres. To give him twice that amount of land would be enabling him to profit by a mistake of the government—a mistake of which he was cognizant. Under those circumstances, we are of the opinion that the judgment of the Supreme Court of Florida must be, and it is, affirmed."

In this case, a mistake was made by officers of the Land Department in describing Gleason's land in his patent according to the survey of 1845, instead of 1875.

The case of Granger v. Swart, Fed. Cas. No. 5,685, 10 Fed. Cas. 961, was an action of ejectment tried to a jury. The facts were as follows: Walker had entered certain lands, which at one time bordered on Lake Koshkonong and the Rock river. The government surveyor had run a meandered line. Afterwards, but before the entry, as the evidence tended to show, a considerable body of land was formed by accretion. This land was low and marshy, but at certain seasons of the year it became dry. Grass grew upon it, hay was cut, and horses and cattle were pastured there. Walker conveyed the tract as it was entered by him to the defendant, who, claiming that the entry covered this land formed since the survey, entered into possession. The plaintiff's title was derived from an entry made subsequent to the defendant's, which in terms covered the new land. He having made out a title, the defendant sought to avoid it by showing his prior entry and patent, claiming that they covered the premises in question. Circuit Justice Miller charged the jury as follows:

"The plaintiff produces in evidence patents from the United States to Gilbert and Finch for the land described in the declaration, and conveyance from Finch to Gilbert, and one from Gilbert to himself. He also proves the defendant in possession at the commencement of this suit. He has thus made out a title and established prima facie his right to recover. To defeat the case thus made, the defendant claims that he has a prior title to the same land, which he attempts to prove by three patents from the United States to Martin Walker, and a deed from Walker to himself.

"The first principal question to be determined by the jury is whether these patents cover the land in controversy. The patents and deeds under which the defendant claims do not pass the title to the premises in question, unless, at the date of the entries on which they were issued, the Rock river, where it is called a river, and Lake Koshkonong, where it is called a lake, extended to and bordered upon the meander line which constitutes the boundary of the lands described in the patents. In other words, if, between the meandered line which by the government's survey was made one of the boundaries of the lands sold to Walker and the bank of the Rock river and shore of Lake Koshkonong, there was at that time a body of swamp, or waste land, or flats, on

which timber and grass grew, and horses and cattle fed, and hay was cut, then the patents to Walker did· not cover this·land, but were confined to the actual limits of said meandered line.

"On the other hand, if, when the· entries were made, the bank of the river and shore of the lake, at an ordinary stage of water, were where this meandered line was represented by the United States survey, and the land in controversy has since been formed by a receding of the water, or by accretion to the shore and bank, then it becomes land of the defendant, or of Walker as the title might be in one or the other. If the first of these positions be found by you to be true, the defendant has no title to the land; if the second be true, he has title to the addition made by the accretion. Verdict and judgment for the plaintiff."

In this case there were conflicting patents, but it does not appear whether they were based on the same or different surveys.

In the case of Horne v. Smith, above referred to, it appears that there was a tract of land beyond the meander line as described in the·plat, which was unsurveyed, and the Supreme Court, in speaking of this feature of the case, said:

"Although it was unsurveyed, it does not follow that a patent for the surveyed tract adjoining carries with it the land, which perhaps ought to have been, but which was not in· fact, surveyed. The patent conveys only the land which is surveyed, and when it is clear from the plat and the survey that the tract surveyed terminated at a particular body of water, the patent carries no land beyond it. Cases of this nature are naturally few in number. Lammers v. Nissen, 4 Nebraska, 245, is somewhat in point. In that case it appeared that between the meander line as run and the Missouri river was a tract of several hundred acres, and the court held·that, as that body of land had not been surveyed, it did not pass by a patent of a lot which on the government plat extended to the meander line. A similar ruling was made in Glenn·v. Jeffrey, 75 Iowa, 20."

From the foregoing cases it will be seen that the general rule is not a hard and fast rule, to be followed in all cases and under all circumstances, but·that· a mistake on the part of the surveyor or public officers charged with the duty of disposing of public lands on behalf of the government, or that a tract of unsurveyed land lies between the meander line and the water, is sometimes held to constitute good ground for departing therefrom.

In the instant case, when the entrymen went upon the land to reside, as they must have done to have perfected their homesteads, they had notice of this large tract of unsurveyed land lying west of the meander line as described in the plat, and that it contained a much larger number of acres than they were seeking to purchase from the government. A short time after their entries, they saw the government in possession of this unsurveyed land, making vast improvements in its endeavor to protect the land and reclaim it for settlement. When the patents were issued, they applied to purchase, and did purchase, receive, and pay for, a definite number of acres as contained in the fractional lots shown 'on the plat. They never occupied this land, and never at any time asserted any right of possession or claim of title. Both the government and the entrymen recognized the meander line as described in the plat and patents, and not the river, as the boundary. They never intended to purchase, and the government never intended to convey, more land than was described in the patents, and especially land that was not surveyed.

Under this state of facts, I am forced to conclude that the general rule does not apply in this case, and that the meander line, and not the river, constitutes the boundary of the plaintiff's lands.

[2] The plaintiff further contends that the defendants' remedy is in equity to reform the patents. This question has been decided against such contention in the case of Security Land & Exploration Co. v. Burns, 193 U. S. 167, 24 S. Ct. 425, 48 L. Ed. 662. This was an action in ejectment, in which a similar defense was entered by the answer, and the Supreme Court, at page 183 (24 S. Ct. 429), disposed of the question as follows:

"Nor in such case is it necessary to go into equity to reform the patent. Where the patentee has in fact received and is in possession of all the land actually described in the lines and distances, and is seeking for more on the theory that his plat of survey carries him to the water, a denial of that claim upon such facts as appear here is well founded, and requires no reformation of the patent. It is simply a question of boundary, and it is a legal defense; it is but a denial that the land claimed is in fact included in the patent as it exists, and no aid of a court of equity is necessary to sustain such defense."

[3] The defendants further contend that this is in effect a suit against the United

States, and, as the government has not consented to be sued, the case should be dismissed on that ground. There is no merit in this contention.

The injunction prayed for in the complaint is denied, and the defendants are awarded their costs.