**WITTMAYER et ux. v. UNITED STATES.**
No. 9625.

Circuit Court of Appeals, Ninth Circuit.
April 8, 1941.

C. D. Borton, of Glasgow, Mont., George W. Farr, of Miles City, Mont., and Joseph C. Tope, of Stockton Cal., for appellants.

Norman M. Littell, Asst. Atty. Gen., Charles R. Denny, Jacob N. Wasserman, and Roger Marquis, Attys., Department of Justice, all of Washington, D. C., John B. Tansil, U. S. Atty., of Billings, Mont., and C. W. Buntin, Sp. Asst. to U. S. Atty., of Fort Peck, Mont., for appellee.

Before GARRECHT and HEALY, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Under acts of Congress[1] the United States instituted suit in the District Court of Montana against defendants (appellants here) to acquire by condemnation lands on an island in the Missouri river, for the construction of the Fort Peck Dam and Reservoir Project.[2]

On May 8, 1920, defendant Walter J. Wittmayer made application for a homestead entry for three fractional lots, "the lot 2 of sec. 15, lot 7 of sec. 10 and lot 7 of section 9, township 23 N., range 39 E., Montana Meridian, containing 68.36 acres, within the Glasgow, Montana, land district."[3] On November 27, 1925, a patent was issued to the applicant conveying to him the fractional lots, containing 68.36 acres, "according to the official plat of the survey of said lands," etc.

On March 14, 1938, the Government filed its suit seeking to condemn the 68.36 acres described in the patent, and in addition 90.84 acres of accreted land. It is undisputed that by 1938 the fractional lots together with accretions contained approximately 159 acres. On January 14, 1939, the Government moved to amend its complaint, which motion was granted. In the amended complaint it is alleged that defendant Walter J. Wittmayer owns only the 68.36 acres of the patent, and that the 90.84 acres added by accretion is a part of the public domain. After answer filed, the sole issue tried to the Court without a jury was as to the ownership of the accreted lands, or "the lands lying between the meander line and the waters of the Missouri river." The Court found in favor of the Government, quieting its title to the lands in question, and defendants appeal from the judgment.

Defendants contend, first, that the Court erred in permitting the Government to amend its complaint ten months after the commencement of the suit, and after issue had been joined. Attention is called to 33 U.S.C.A. § 594 providing that condemnation suits "shall be diligently prosecuted on the part of the United States in order that such compensation may be promptly ascertained and paid." The record shows that after the Commissioners appointed by the Court appraised the entire 159 acres, the Government appealed to the District Court for a trial de novo on the question of value. Defendants, on January 16, 1939, demanded a jury trial which will be had when this appeal is disposed of. Defendants concede that the granting or denial of an application to amend is within the discretion of the trial judge, whose ruling will not be disturbed on appeal unless there has been an abuse of discretion. The evidence before the trial court, which resulted in a judgment in favor of the Government, shows that after the complaint was filed facts were discovered by the Government tending to prove that a substantial amount of accreted land lying between the meander line and the river had been in existence prior to defendant Walter J. Wittmayer's homestead entry. Under the circumstances here shown, we are convinced that the trial Court did not abuse its discretion in granting the motion to amend.

Defendants next attack the findings of the trial Court upon the ground that they "are unsupported by the evidence, and that the Court erred in its conclusions of law."

---

[1] Act of August 1, 1888, c. 728, 25 Stat. 357, 40 U.S.C.A. § 257; and Act of April 24, 1888, c. 194, 25 Stat. 94, 33 U.S.C.A. § 591.

[2] Public No. 409, House Resolution 6732, Act of Congress approved Aug. 30, 1935, 49 Stat. 1034, particularly referred to as House Document No. 238 of the 73rd Congress, authorizing the construction of the Fort Peck Dam and all things incidental thereto.

[3] Description is from exemplification of original record of the Department of Interior, General Land Office, plaintiff's exhibit 3. Description in patent covers same land, plaintiff's exhibit 4.

Briefly, the trial Court found that in 1915 when the original survey of Township 23 North, Range 39 East, Montana Meridian, was made, "and at all times since then, said island was bounded on the easterly side by the main channel of the river and on the westerly side by an old channel thereof through which water from the river did not flow save and except when said river was at high stage, and which had no flow of water therein when the river was at its usual low water mark;" that at times of high water, particularly in 1916 and 1917, the river carried and deposited in the old channel large quantities of "sand, silt, soil and other solid materials, * * * thus adding materially to the area of said island, and raising the level of the land in and adjacent to said channel;" that the land thus added "had prior to May 8, 1920, become land in fact, bearing trees, willows and other vegetation," and that said land was not within the exterior boundaries of the homestead entry made by defendant Walter J. Wittmayer, and was unsurveyed and unappropriated land belonging to the United States of America; that the patent issued by the Government to defendant Walter J. Wittmayer on November 27, 1925, granted to him a tract of land containing 68.36 acres and no more. Upon its findings the Court concluded that defendant Walter J. Wittmayer was the owner of the land described in the patent; that the Government "is entitled to judgment and decree quieting all title to the lands in dispute as against" the defendants, and further "adjudging and decreeing all title to the lands in dispute to be in the United States of America, subject, however, to the claim of the state of Montana to that portion of the lands which lies in the abandoned channel of the Missouri river lying westerly of Lot 7 of Section 9, to which said land the quantity of which is undetermined, title appears to be in the state of Montana."

As stated by defendants, the clear cut issue is thus presented "whether the meander line as established" by the Government survey of 1915, "became the boundary line of defendant's homestead entry, or whether the defendant took to the river at low water mark and now owns all the land added thereto by accretion."

■ The official survey of 1915 purports to meander the mean high water mark of the island. The 1925 patent to defendant Walter J. Wittmayer grants to him the fractional lots, containing 68.36 acres, "according to the official plat of the survey of said land," etc. Usually the boundary of such a grant is the actual water line and not the meander line. St. Paul & P. Railroad Co. v. Schurmeir, 74 U.S. 272, 286, 287, 7 Wall. 272, 19 L.Ed. 74. But there are two exceptions to this rule. The first is that the meander line will be treated as the true boundary, where by reason of fraud or mistake in the survey, there was in fact at the time of the survey a substantial amount of land between the survey line and the actual shore. Jeems Bayou Club v. United States, 260 U.S. 561, 564, 43 S.Ct. 205, 67 L.Ed 402; Producers Oil Co. v. Hanzen, 238 U.S. 325, 339, 35 S.Ct. 755, 59 L.Ed. 1330; Security Land & Exploration Co. v. Burns, 193 U.S. 167, 180, 181, 24 S.Ct. 425, 48 L.Ed. 662; Horne v. Smith, 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68; Lee Wilson & Co. v. United States, 245 U.S. 24, 29, 38 S.Ct. 21, 62 L.Ed. 128. The second exception is that the meander line will be treated as the boundary of the grant if, between the time of survey and the time of entry, a substantial amount of land was formed by accretion between the survey line and the waters of the stream. Granger v. Swart, 10 Fed.Cas. page 961, No. 5,685; Mecca Land & Exploration Co. v. Schlecht, D.C., 4 F.2d 256; United States v. Eldredge, D.C., 33 F.Supp. 337.

■ The trial Court's judgment is based upon conflicting evidence. After a careful examination of the record we are unable to say that the Court's findings are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.[4] We think it unnecessary to discuss the evidence in detail. We are impressed, as undoubtedly was the trial Court, with the testimony of the witness Parks relative to the building up of the land in dispute by flood waters of the river. The evidence of the finding of growing cottonwood trees upon the accreted land, respectively 21, 16, and 12 years old, is significant. Defendant Walter J. Wittmayer admitted that in 1920 trees two years old were growing west of the meander line. Cottonwood trees do not grow unless rooted in soil well above low water mark. The testimony of defendant Walter J. Wittmayer in support of his case was unconvincing. Its effect was depreciated by his statement, in the presence of the Commissioners, that there was not much difference

---

[4] The new rules govern appeals in condemnation proceedings. Rule 81(a)(7), F.R.C.P.

between the land at the time the Commissioners viewed it on April 28, 1938, and when he made his entry; and by the statement of Chester Taylor, a Government witness, who testified that in 1925 defendant Wittmayer told him that he had "entered" 70 acres, "but there was almost twice that much land, with the land that had been made to the island on the part that he had taken." Concerning these statements, upon his direct examination, defendant Wittmayer testified as follows:

"Q. Will you tell us whether or not you remember the occasion of April 28, 1938, when the commissioners were at your place? A. Yes, sir. * * *

"Q. And what have you to say about the conversation? A. Well, I have this to say. I knew that they were trying to get me off to themselves and I knew that they were trying to pump me, so I thought I would just give them an ear full.

"Q. What have you to say as to the contents of the conversation? A. I think that was correct as he told it, yes.

"Q. You know Mr. Chester Taylor? A. Yes. * * *

"Q: Do you remember the conversation that he testified to? You heard it? A. I don't remember the conversation, no.

"Q. Would you say that you didn't say that conversation? A. No, I wouldn't. I wouldn't, no. I don't know why I would have, but then if he said I did, we will give him the benefit of the doubt."

The findings of the trial Court fall within the familiar rule, that where based upon conflicting evidence they are presumptively correct, and unless some obvious error of law, or mistake of fact, has intervened, they will be permitted to stand. Silver King Coalition Mines Co. v. Silver King C. M. Co., 8 Cir., 204 F. 166, 177, Ann. Cas.1918B, 571.

The provisions of the new procedural rules that the findings of fact of the trial judge are to be accepted on appeal unless clearly wrong (Rule 52(a), 28 U.S. C.A. following section 723c), is but the formulation of a rule long recognized and applied by courts of equity. Guilford Const. Co. v. Biggs, 4 Cir., 102 F.2d 46, 47.

As was said by Mr. Justice Holmes in Adamson v. Gilliland, 242 U.S. 350, 353, 37 S.Ct. 169, 170, 61 L.Ed. 356 (citing Davis v. Schwartz, 155 U.S. 631, 636, 15 S.Ct. 237, 39 L.Ed. 289), the case is pre-eminently one for the application of the practical rule, that so far as the findings of the trial judge who saw the witnesses "depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."

Affirmed.