[redacted]

**Charles W. DeBOER, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. J76–9 Civ.**

United States District Court, D. Alaska.

May 17, 1979.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Jim Reeves, Faulkner, Banfield, Doogan & Holmes, Anchorage, Alaska, for plaintiff.

Cynthia Pickering, Asst. U. S. Atty., Anchorage, Alaska, for defendant.

Jonathan K. Tillinghast, Asst. Atty. Gen. of Alaska, Juneau, Alaska, for applicant for intervention State of Alaska.

MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on cross-motions for summary judgment.

In this case the plaintiff DeBoer has sued the United States under 28 U.S.C. § 2409a to quiet title to accretions which have been gradually added to Mr. DeBoer's federal homestead near Gustavus, Alaska, on the north shore of Icy Strait. The State of

Alaska is also a party to this case because it has made land selection applications under the Alaska Statehood Act for the disputed accretions. These applications were filed after the plaintiff received patent to his homestead and none of them have been adjudicated by U. S. Bureau of Land Management. The claim of the State of Alaska depends upon whether the United States holds title to the accretions so that the property was available for selection.

In July, 1920, a U. S. Surveyor executed a survey of fractional T. 40 S., R. 59 E., Copper River Meridian, located on the north shore of Icy Strait. In December, 1961, Lot 2, Section 17, and Lots 8, 9, and NE ¼ SE ¼, section 18, was patented to the plaintiff Charles W. DeBoer as a homestead. The lots as surveyed in 1920 contained 165.05 acres bounded by meander lines on two sides. In June, 1959, when plaintiff made a homestead entry on the property described above, these lots contained 270.27 acres, the additional 105.22 acres having been added to the parcel along its seaward boundary by gradual accretion. By 1977 it was estimated that about 107 acres more had been added to the property in question so that the entire parcel including the lots at the time of survey, the accretions added between survey and homestead entry, and the accretions added since homestead entry totaled approximately 377 acres. The question before the court focuses on the title to the 105.22 acres added by accretion between survey and homestead entry because title to those accretions determines the title to the accretions since homestead entry.

■ The question of title to accretions gradually deposited by the ocean on adjoining upland property patented under the federal homestead laws is governed by federal law. *Hughes v. Washington*, 389 U.S. 290, 291, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967).

■ The general federal rule is that the grantee of land bounded by a body of navigable water acquires a right to any natural and gradual accretion formed along the shore. *Hughes v. Washington*, 389 U.S. at 293–94, 88 S.Ct. 438. *Jefferis v. East Omaha Land Co.*, 134 U.S. 178, 189, 10 S.Ct. 518,

33 L.Ed. 872 (1890). The reasons for this rule have been stated variously. " '[T]hese owners being often losers by the breaking in of the sea, or at charges to keep it out, this possible gain is therefore a reciprocal consideration for such possible charge or loss.' " *Jefferis v. East Omaha Land Co.*, 134 U.S. at 192, 10 S.Ct. at 522 (quoting Blackstone's Commentaries). In *Hughes v. Washington*, the U. S. Supreme Court stated that, "Any other rule would leave riparian owners continually in danger of losing the access to water which is often the most valuable feature of their property, and continually vulnerable to harassing litigation challenging the location of the original water lines." 389 U.S. at 293–94, 88 S.Ct. at 441.

But despite the sound reasons for this rule, some courts, including the Ninth Circuit Court of Appeals, have discovered an exception to it. The exception is that the meander line will be treated as the boundary of the grant if, between the time of survey and the time of entry, a substantial amount of land was formed by accretion between the survey line and the shoreline. *Wittmayer v. United States*, 118 F.2d 808, 810 (9th Cir. 1941); *Smith v. United States*, 593 F.2d 982 (10th Cir. 1979). This exception has come to be known as the *Basart* doctrine because of its adoption by the Under Secretary of Interior in *Madison v. Basart*, 59 I.D. 415, 422 (1947). The *Basart* opinion cited the Ninth Circuit opinion in *Wittmayer* in support of the Department's adoption of this exception to the general rule.

This exception, and the *Wittmayer*·opinion in particular, have been persuasively criticized in a well reasoned opinion of the District of North Dakota. *United States v. 11,993.32 Acres of Land*, 116 F.Supp. 671 (D.N.D.1953). In that opinion District Judge Vogel fully examined the case law on the subject and found a lack of support either in equity or in precedent for the conclusory statement of the *Basart* doctrine found in *United States v. Wittmayer*. The primary objection to the *Basart* doctrine is that the determination of what is a "sub-

stantial" amount of accretion between survey and patent subjects land titles to a vague and uncertain standard.

The rule of the second exception as contended for here by the Government suggests its own unfitness. Certainty of titles is a fundamental consideration in the broad area of law concerned with conveyancing. A rule based upon a determination of whether the accretion between the time of survey and the time of entry is substantial or not necessarily makes the scope of a patent of land bounded by a meander line uncertain or makes the meander line presumptively the boundary line, which it confessedly is not. Such a rule as suggested by the Government would be that generally the patentee acquires the accretions but that if he stands to get too much according to an uncertain standard, he then doesn't get any. Such an exception would soon displace the generally accepted rule that a patentee, on lands bounded by water, owns the accretions thereto in the absence of fraud or mistake.

*United States v. 11,993.32 Acres of Land,* 116 F.Supp. at 679.

This court further notes that this exception to the general rule appears inequitable. There is no evidence in the record that the plaintiff knew of the difference between the survey and the land as it appeared on his entry. The existence of this exception to the rule causes this homesteader, and others like him, to lose what is probably one of the most valuable aspects of his property, its access to the water. While the homesteader would receive a "windfall" from application of the general rule, this enrichment is not "unjust" because he took the risk of losing the "windfall" from the same natural forces that added the acreage to his homestead.

█ Having noted this court's disagreement with the *Basart* doctrine, no way exists to escape the binding effect of the Court of Appeals decision in *United States v. Wittmayer,* 118 F.2d 808 (9th Cir. 1941), one of the cases upon which the doctrine is based. While the Supreme Court decisions discuss the general rule, they do not decide whether the *Basart* exception has the disapproval of the court. In view of this state of the law, this court has no choice but to hold that the meander line will be treated as the boundary of the grant if, between the time of survey and the time of entry, a substantial amount of land was formed by accretion between the survey line and the shoreline.

The only question left to be decided is whether the 105.22 acres added to the 165.05 acre lot between 1920 and 1959 is "substantial." As noted above there is little to guide the courts in deciding what is "substantial." The United States Manual of Surveying Instructions (1973) at 172 states that:

In determining what constitutes a "substantial" accretion, to which the rule in *Madison v. Basart* is applicable, the area of accretion should be compared quantitatively with the riparian lots to which it attached. Some consideration should also be given to the total area accreted. Accretion to a small lot might be large in proportion but negligible in absolute size. From the standpoint of *size* and *relative size,* the area in question can be weighed as in the case of omitted lands.

(emphasis in original).

█ It has long been established that when grants to federal land are at issue any doubts are resolved for the Government, not against it. *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 617, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978). *United States v. Union Pacific R. Co.,* 353 U.S. 112, 116, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957). In view of this canon of construction this court finds the 105.22 acres to be substantial" both in size and relative size and therefore this case fits within the exception to the general rule.

In view of the above, the court holds that title to the disputed 105.22 acres of accretion added between survey and patent and the acreage added since that time must be quieted in favor of the United States.

Accordingly IT IS ORDERED:

1. THAT the plaintiff's motion for summary judgment is denied.

2. THAT the United States' motion for summary judgment is granted.

3. THAT the Clerk may prepare a final judgment form stating that title to the disputed accretions is quieted in favor of the United States.