Charles W. DeBOER, Plaintiff-Appellant,

v.

UNITED STATES of America and State of Alaska, Defendants-Appellees.

No. 79–4528.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 1980.

Decided Aug. 17, 1981.

**1314**

James N. Reeves, Faulkner, Banfield, Doogan & Holmes, Anchorage, Alaska, for plaintiff-appellant.

Robert L. Klarquist, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before WALLACE, HUG and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

Charles W. DeBoer appeals from the judgment of the district court in a quiet title action brought by him against the United States under 28 U.S.C. § 2409a. *DeBoer v. United States*, 470 F.Supp. 1137 (D.Alaska 1979).

The parties, including an intervening party, the State of Alaska, dispute title to 105.22 acres of land which accreted to appellant's federal homestead on the north shore of Icy Strait near Gustavus, Alaska.

Based on a 1920 survey, the 1961 federal land patent that granted appellant title to his homestead showed 165.05 acres, delineated in part by a meander line [1] representing the seaward boundary. In 1959, when appellant made a homestead entry on the land, 105.22 additional acres had accreted along the seaward boundary. On cross-motions for summary judgment, the district court found that a previous decision of this Court, *Wittmayer v. United States*, 118 F.2d 808 (9th Cir. 1941), compelled the conclusion that title vested in the United States because the accretion was substantial in relation to the original survey. Because we conclude that under *Wittmayer* and subsequent authorities, additional factors should be examined, we remand.

Federal law governs questions regarding the construction of a federal land patent and "the quantum of the premises which it conveys," *Ritter v. Morton*, 513 F.2d 942, 946 (9th Cir.), *cert. denied*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975), including title disputes arising out of the gradual accretion of land on oceanfront property patented under the federal homestead laws. *See Hughes v. Washington*, 389 U.S. 290, 293, 88 S.Ct. 438, 440, 19 L.Ed.2d 530 (1967); *Borax Consol., Ltd. v. City of Los Angeles*, 296 U.S. 10, 22, 56 S.Ct. 23, 29, 80 L.Ed. 9 (1935). The *Hughes* Court articulated the general federal rule that "the grantee of land bounded by a body of navigable water acquires a right to any natural and gradual accretion formed along the shore." 389 U.S. at 293, 88 S.Ct. at 440. "Any other rule would leave riparian owners continually in danger of losing the access to water which is often the most valuable feature of their property . . . ." *Id.* See also *Smith v. United States*, 593 F.2d 982, 985 (10th Cir. 1979). In an earlier application of the rule, the Court had deter-

---

1. In federal surveying practice, boundaries represented by watercourses customarily are described by "meander lines." A meander line generally is not the strict boundary of a tract, but is run to define the sinuosities of the shore or bank of a body of water and to ascertain the acreage and monetary value of the parcel subject to sale. *Whitaker v. McBride*, 197 U.S. 510, 512, 25 S.Ct. 530, 531, 49 L.Ed. 857 (1905); *Ritter v. Morton*, 513 F.2d 942, 946 (9th Cir.), *cert. denied*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975).

mined that the water boundary of federal public land, described in a patent by reference to a meander line, extends to the actual water line regardless of accretions occurring prior to the time the patent issued. *Jefferis v. East Omaha Land Co.*, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 (1890). There the Court commented on the universal acceptance of the rule by modern and ancient jurists and legislators, who differed only in their description of the rule's rationale:

> By some, the rule has been vindicated on the principle of natural justice, that he who sustains the burden of losses and of repairs, imposed by the contiguity of waters, ought to receive whatever benefits they may bring by accretion; by others, it is derived from the principle of public policy, that it is the interest of the community that all land should have an owner, and most convenient that insensible additions to the shore should follow the title to the shore itself.

*Id.* at 189, 10 S.Ct. at 520 (quoting *Banks v. Ogden*, 69 U.S. (2 Wall.) 57, 67 (1865)).

The *Hughes* and *Jefferis* principles would require that this Court grant appellant title to the disputed 105.22 acres. The United States and the State of Alaska, however, argue that there is an exception to the rule of these cases which requires that title vest in the United States. In support of this contention, appellees cite *Wittmayer v. United States*, 118 F.2d 808 (9th Cir. 1941), in which this Court described two exceptions to the general rule.

> The first [not at issue in *Wittmayer* or this case, described herein as the "omitted lands" exception] is that the meander line will be treated as the true boundary, where by reason of fraud or mistake in the survey, there was in fact at the time of the survey a substantial amount of land between the survey line and the actual shore. [Citations omitted.] The second exception is that the meander line will be treated as the boundary of the grant if, between the time of survey and

> the time of entry, a substantial amount of land was formed by accretion between the survey line and the waters of the stream. [Citations omitted.]

*Id.* at 810. The district court decided that the 105.22 acre, pre-entry accretion was substantial in relation to the 165.05 acres patented, and that the federal government therefore was entitled to the land under the second or "substantial accretion" exception outlined in *Wittmayer.* 470 F.Supp. at 1139.

Our review of *Wittmayer* and related decisions convinces us, however, that the substantial accretion exception is not based solely on a comparison of the amount of land patented to the amount of land accreted between the time of survey and time of patent. We have seen that the rule that accretions occurring after entry accrue to the benefit of the landowner is based upon the equitable principle that the land is equally subject to loss by erosion as it is subject to gain. *Hughes v. Washington*, 389 U.S. 290, 88 S.Ct. 438, 19 L.Ed.2d 530 (1967); *Jefferis v. East Omaha Land Co.*, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 (1890). So too the substantial accretion exception, which comes into play where accretion occurs prior to entry, is guided by equitable considerations. *See Smith v. United States*, 593 F.2d 982, 988 (10th Cir. 1979); *Wittmayer v. United States*, 118 F.2d 808 (9th Cir. 1941); *Mecca Land & Exploration Co. v. Schlecht*, 4 F.2d 256 (D.Ariz.1925).

In determining whether the substantial accretion exception is to be applied, the initial question is whether the accretion is quantitatively considerable. In this case, the district court's determination that the increase both in size and relative size was considerable is not clearly erroneous. Having resolved that threshold question, however, the court should go on to weigh the equity factors in favor of both parties and determine whether the landowner would be unjustly enriched if he were given title to the accreted land. This is the approach

implicitly taken by this Court in *Wittmayer* and more fully articulated by the Tenth Circuit in *Smith v. United States,* 593 F.2d at 986–88.

In *Wittmayer,* the Court dealt with a fairly sizable accretion, but the decision rested to a large degree upon the Court's recognition that it would have been inequitable to allow Wittmayer to receive the benefit of accretion in the particular circumstances of the case. He knew, at the time of his entry, that land had accreted to the west of the meander line and he had in fact told others that, although he had entered upon 70 acres, almost twice as much land was on the part he had taken. 118 F.2d at 810–11.

Factors such as the landowner's knowledge of accretion at the time of entry and his lack of occupation of the accreted land bear on the justice of permitting public land to go to a private owner who paid for less than the total acreage claimed. Such factors were also considered in *Mecca Land & Exploration Co. v. Schlecht,* 4 F.2d 256 (D.Ariz.1925), a case relied upon by the *Wittmayer* Court in articulating the substantial accretion exception.[2] In *Mecca Land,* the court noted that upon entry, the homesteaders had actual notice that a large tract of land was lying west of the meander line, and they never occupied or asserted any right of possession to it. In addition, they had silently watched the government make substantial improvements on the land prior to asserting their claim for equitable relief. *Id.* at 260.

The Tenth Circuit has recently followed *Wittmayer* and refused to follow *United States v. 11,993.32 Acres of Land,* 116 F.Supp. 671 (D.N.D.1953), which rejected the substantial accretion exception in its entirety. *Smith v. United States,* 593 F.2d 982 (10th Cir. 1979). In *Smith,* the court articulated the test to be applied as whether accretion is so substantial that it rises to the level of "unjust enrichment." *Id.* at 988. Factors relied upon in concluding that accretion was substantial in that case were the reasonableness of the landowner's belief that he was receiving four times the amount of land he had bid for, the lack of importance of waterfront access to the parties in the bidding and purchase process, and the obvious fact that the government would have acted differently had it realized the error. *Id.*

These court cases illustrate, then, that the substantial accretion exception has not been applied solely on the basis of mere quantitative analysis, but also upon consideration of the particular equitable factors bearing on unjust enrichment.

The appellees argue that such an equitable standard is inconsistent with the rule which has been applied by the Department of Interior and which has come to be known as the *Basart* doctrine after *Madison v. Basart,* 59 I.D. 415 (1947). The reasons advanced for such a strict rule are well refuted in *United States v. 11,993.21 Acres of Land,* 116 F.Supp. 671 (D.N.D.1953). To the extent that Department decisions reflect application of a substantial accretion exception based solely upon purely quantitative factors, we disagree. We note, however, that even in *Madison v. Basart* itself, equitable factors such as the landowner's knowledge of a discrepancy and lack of any risk to the particular landowner involved were considered. 59 I.D. at 419 n. 5 & 422–23.

Although the district court in this case discussed the equitable factors militating against applying the substantial accretion

---

**2.** The *Wittmayer* Court also cited *Granger v. Swart,* 10 Fed.Cas. 961 (C.C.D.Wis.1865) and *United States v. Eldredge,* 33 F.Supp. 337 (D.Mont.1940) as support for the substantial accretion exception. *Granger v. Swart* recites the substantial accretion rule but the opinion contains little helpful discussion. *United States v. Eldredge* is inapposite since it is clear that opinion was dealing with the omitted lands exception rather than the substantial accretion exception.

exception to the appellant,[3] it concluded that only a quantitative analysis was relevant to the result. Accordingly, it is appropriate to remand this case to the district court to determine whether the substantial accretion exception should be applied under the standards outlined by this opinion.

Reversed and remanded.

3. Noting the inequity inherent when the substantial accretion exception considered only the quantitative increase in the size of the land, the court stated:

There is no evidence in the record that the plaintiff knew of the difference between the survey and the land as it appeared on his entry. The existence of this exception to the rule causes this homesteader, and others like him, to lose what is probably one of the most valuable aspects of his property, its access to the water. While the homesteader would receive a "windfall" from application of the general rule, this enrichment is not "unjust" because he took the risk of losing the "windfall" from the same natural forces that added the acreage to his homestead.

470 F.Supp. at 1139.