| iWALTZER, Judge,
concurring.
While I agree that the trial court’s judgment should be affirmed, I believe that this Court should recognize that this result proceeds from recognition of an exception to the general rule in Louisiana that the water course and not the meander line is the correct boundary.
*1289 43 U.S.C. section 752, Boundaries and contents of public lands; how ascertained, provides the origin of meander lines:
Second. The boundary lines, actually run and marked in the surveys returned by the Secretary of the Interior ... shall be established as the proper boundary lines of the sections, or subdivisions, for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which have not been actually run and marked shall be ascertained, by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse.
The meander line is run for the purpose of computing acreage of fractional lots, but the water line, and not the meander line, is the true boundary.
In Palmer v. Wilkinson, 141 La. 874, 75 So. 806, 808 (La.1917), Chief Justice Monroe quoted from the U.S. Supreme Court opinion Horne v. Smith, 159 U.S. 40, 46,15 S.Ct. 988, 40 L.Ed. 68 (1895):
The general rule adopted by both state and federal courts is that meander lines are not run as boundaries of the tract surveyed, but for the purpose of defining the sinuosities of the streams ... and as a 12means of ascertaining the quantity of land embraced in the survey. The stream or other body of water, and not the meander line as actually run on the ground, is the boundary, ... The meander line will, however, be the boundary where it runs with regard to a supposed body of water which does not, in fact, exist; where the land between such line and the water is platted as a separate survey, or where the surveyor omits to include large tracts lying between the meander line, as surveyed, or as pretended to have been run on the ground, and the stream or other body of water.
This principle was recognized in Acadia-Vermilion Rice Irrigating Co. v. Miller, 178 La. 954, 152 So. 576, 577 (La.1933), which noted an exception thereto:
The rule is, it is true, that a meander line along a stream or body of water is not a boundary, but the body of water whose margin is meandered is the true boundary; but this rule has been held to apply only where the distance between such meander line and the actual shore line is comparatively small. It is not applied where, as here, the real shore line is distant from the supposed shore line, and there is a large area of land between the supposed shore line, as shown on the plat, and the actual shore line.
In 1944, the Louisiana Supreme Court again required the survey from the water’s edge rather than from the meander. State v. Aucoin, 206 La. 787, 20 So.2d 136 (La.1944).
In Stamper v. Bienville Parish Police Jury, 153 So.2d 503 (La.App.2d Cir.1963), the court noted that meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the trace, but for the purpose of defining the sinuosities of the banks and to ascertain the quantity of the land in the fraction. In preparing the official plat from the field notes, the surveyor represents the meander line as the border line of the stream and shows that the water course, and not the meander line, is the boundary. (Citing St. Paul and Pacific R. Co. v. Schurmeir, 7 Wall. 272, 74 U.S. 272,19 L.Ed. 74, 78 (1868); Hardin v. Jordan, 140 U.S. 371, 11 S.Ct. |3808, 35 L.Ed. 428 (1891) and Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 35 L.Ed. 442 (1891).
In R.D. Fornea Co., Inc. v. Fornea, 324 So.2d 619, 622 (La.App. 1st Cir.1975), writ denied, 326 So.2d 374 (1976) the court held:
Unless a clear intention to the contrary is expressed in the act of conveyance, the *1290 water line will be regarded as the boundary where meandered water is present. State v. Aucoin, 206 La. 787, 20 So.2d 136 (La.1944). We think that principle to be applicable here, as no contrary intention is expressed in either description.
La.C.Civ.Pro. art. 3692 permits a trial judge in a boundary action to appoint a surveyor to conduct a survey “in accordance with the prevailing standards and practices of his profession,” but does not define those standards and practices. In the case at bar, each party produced a surveyor, neither of which was appointed by the court.
The trial court’s reasons for judgment seem to prefer use of the meander line as a “fixed point from the bank of the bayou” which does not change with the movement of the bayou. As noted in dicta in Arms v. New Orleans Area Council, Boy Scouts of America, 522 So.2d 668, 673 (La.App. 5th Cir. 1988), writ denied, 523 So.2d 1340 (1988), it can be just as hard to reconstruct a meander line as a water line.
The majority and the trial court neither mentioned nor distinguished any of the body of jurisprudence that uses the water line, and not the meander line, as the basis for the boundary, absent a showing of an exception to the general rule, as set out in Horne and Palmer.
The issue is confused, when considered in light of Estopinal’s testimony:
The front meander line is the line established by the government land surveyor around 1835 to 1839 ... and it was used as the bank of the bayou by the government land office in sectionalizing this particular township. And in all his notes he refers to the bank of the bayou. |4He is referring to the front meander line. And that is to establish where the bank of the bayou is in terms of deed description.
Q: So all surveys in this area by your office are measured from the meander line?
A: Yes. All done by anybody is_ But in order to fix the line the front meander line is established so as the bayou moves back and forth the boundaries in the rear would not move.
This surely appeals to common sense, particularly when coupled with the law that grants alluvion to the riparian owner. Perhaps the matter could be clarified and the “water-line” cases distinguished had the trial court found that a substantial area had developed between the water’s edge and the meander line, to justify moving away from the general rule that the water line, and not the meander line, is the boundary. While I agree with the majority’s result, I believe it is necessary to recognize the general rule, and make a finding that this exception applies, making the use of the meander line appropriate.
The trial court’s acceptance of Mr. Estopi-nal’s testimony has a basis in the record. Mr. Estopinal’s testimony is more professional than Mr. Ruello’s. The latter does not seem to understand that if significant allu-vion has formed, the meander will be the appropriate boundary, and the alluvion will belong to the riparian owner. To further complicate the case, Ruello testified that he measured from “the bank line,” neither the meander line nor the water line. He used the bank line, because the deed refers to the left descending bank of the bayou. He said he would tie into the meander line only if he were surveying “the whole section.” Ruello argues that the meander line is the point of origin for measuring the 40 arpent, not the particular property devised by his client’s title. He admitted, when questioned by the trial judge, that he didn’t check to see where the bank was, and assumed that the bank of the bayou was where it was when |s“everybody was doing their measurement because of the surveys I had down the road, and because of finding the older markers I had found 350 ft. from where I started.”
The “old fence” boundary is incorrect whichever beginning point is taken. Estopi-nal testified that he didn’t know where the bayou’s bank was in 1959 when his client’s deed was confected, so he compared how far *1291 it was from the bank of the bayou to the back line, and found that it fell some 10 or 15 feet short of the old fence. He noticed 350 feet from the meander line was 35 to 40 feet beyond the old fence line, so neither interpretation of the deed fell at the line of the old fence. From this, he concluded that there existed grounds for a boundary dispute, and measured from the meander.
Although neither the federal statute nor the cases say it explicitly, the logical result is that for ownership purposes, the owner owns to the water’s edge; however, in surveying measurements called for by title, the meander lines drawn in the early 1800’s by the federal surveyors are the starting points. This interpretation is consistent with the cases that hold the owner’s ownership between the meander line and the water’s edge is a riparian right, but the accrual of accretion does not change the back line of the owner’s property.
This is, quite clearly, the common sense result. It is also consistent with the line of jurisprudence that holds that these early federal surveys that set out the township lines cannot be corrected by this Court. See, Texas International Petroleum Corp. v. Delacroix Corp., 94—1426 (La.App. 4th Cir. 1/31/95), 650 So.2d 815, writ denied, 95—0467 (La. 4/21/95), 653 So.2d 567.
The power to make and correct surveys of public lands belongs to the political department of the government, and while the lands are subject to the ^supervision of the General Land Office, its decisions in such cases are unassailable by the courts, except by a direct proceeding. Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566 (1888). This principle.is so basic that even if the governmental survey is clearly incorrect, it nevertheless creates the township sections and boundaries. State v. Ward, 314 So.2d 383, 396 (La.App. 3rd Cir.1975), writ denied 319 So.2d 440 (La.1975). It is consistent with the trial court’s interpretation herein.
The majority is correct in requiring a property description in a judgment affecting title; however, I do not believe that the case must be remanded for the judgment to be thus amended. This can be done on appeal, just as we amend other judgments, where all the evidence is present. Copellar v. Yount, 344 So.2d 1114 (La.App. 3d Cir.1977) on which appellant relies is inapposite. There, remand was necessary because the true legal description could not be ascertained, since the land had never been surveyed. Copellar v. Yount, 344 So.2d at 1115.