ROGERS, J.
Plaintiff, in February, 1904, purchased from Samuel J. Smith a tract ot land containing 1,386 acres in sections 21, 22, and 27, township 16, range 12, Bossier parish, known as the “Magenta Plantation.”
This land lay adjacent to a shallow lake, *1021 known as “Half Moon Lake,” in section 22. The lake had been meandered by the government, and the various tracts had been sold off as fractional sections and quarter sections, etc., which had come, through mesne conveyances, into the possession of said Smith.
Many years after the governmental survey and the sale of the adjacent lands, the Bossier levee board constructed levees in Bossier parish, resulting in the partial drying up of the lake. The levee board had the meander lines of the lake "run out, and, upon its application, received a deed to the lake from the state of Louisiana.
A few months after plaintiffs had purchased the Magenta plantation from Smith, they bought from the Bossier levee board this shallow lake, consisting of 100 acres of land and lake.
Plaintiffs purchased the Smith property for $80,000, and, after paying $51,000 on account thereof, were unable to make any further payments, because of several bad crop years. In order to settle the matter, plaintiffs, for a cash consideration of about $7,-000 and the return of their unpaid notes, on September 12, 1908, retransferred to Smith the property previously acquired from him, together with 17.96 acres of land which had been reclaimed from Half Moon Lake, and which formed part of the property they had purchased from the Bossier levee board.
After this settlement, had been effected, plaintiffs removed from the property, and Smith took charge. In 1909, he sold a portion of the land to Gulley, and in 191S he sold another portion of the land to Oaplis.
Because it did not justify the expense, the low, wet, lake lands remained unworked by the plaintiffs. When oil was discovered, however, in 1916, they leased this shallow lake land, and collected the rents.
Half Moon Lake continued to dry up more and more each year, and, in course of time, Gulley and Oaplis began/to encroach upon portions of the lake lands. When plaintiffs finally demanded rent for the use of the lands so encroached upon, Gulley and Oaplis set up a claim of ownership thereto by virtue of their purchase from Smith, as part of the Magenta plantation.
Plaintiffs instituted these suits, one against Gulley and thq other against Oaplis, alleging their ownership of the lake, and that defendants, owners of lands adjoining, were encroaching on their land, having some of it in cultivation. Each suit is one in boundary, and for rent for so much of plaintiffs’ land as will be found to be cultivated by the defendant.
The answers of both defendants are practically the same, and each .called Smith, their vendor, in warranty. The warrantor answered, denying that he sold defendants this shallow lake, and averring that he was the owner theréof.
The sole defense is that, when plaintiffs retransferred the tract of land to Smith, they included, or intended to include, the shallow lake land which they had purchased from the Bossier levee board, and, not being the owners of the land claimed, they were without right to demand the establishment of the boundary.
- The cases were consolidated by consent, but separate judgments were rendered ordering the survey and rejecting defendant’s .claim to the land in dispute. The judgments further ordered that the demands of defendant against the warrantor await the final survey, but were silent on the plaintiffs’ claim for rents.
From these judgments, defendants and the warrantor have appealed, and plaintiffs have answered the appeal, and asked that the decrees be amended so as to allow their claim for rents, or, in the alternative, to preserve their right thereto.
In the deed from Smith to plaintiffs, the *1024 tract of land sold is described as containing 1.386 acres. In the. retransfer from plaintiffs to Smith, the tract of land is described as containing 1,403.96 acres. The difference between the acreage when plaintiffs bought from Smith and the acreage when they re-transferred to Smith is 17.96 acres, which is the estimated “tillable land of the 100 acres of land and water,” which the Bossier levee board had sold to plaintiffs.
In the deed from plaintiffs to Smith, after describing the land in the same manner as it was described in their deed of .purchase, by quarter sections, etc., as lying east and south of Half Moon Lake, and as being the Magenta plantation, it is recited':
“And also 17.96 acres of land situated in section 22, Tp. 16, R. 12, purchased by these vendors from the board of commissioners of the Bossier levee district; said lands herein sold containing in all 1,403.96 acres, more or less,” etc.
It is clear from the mere reading of this deed that the only lands conveyed therein by plaintiffs to Smith were the original 1.386 acres, forming the Magenta plantation, acquired from him, plus 17.96 acres of the 100 acres of land and water, which plaintiffs had acquired from the Bossier levee board. Plaintiffs retained the ownership of the remaining land and water, approximately 83 acres, purchased 'by them from said levee board.
Defendants tried to make it appear that this lake land was always a part of the Magenta plantation, but it was shown by the testimony of Smith, himself, that, at the time he sold to plaintiffs, he knew that he had no title to the land, and that the levee board was claiming it, and he reduced the purchase price $1,000, so that plaintiffs could purchase the property from the levee board. It is also shown that, when Smith acquired from other parties all the land around this lake, the properties were described as fractional quarters and as lying east or west or south of Half Moon Lake. None of his deeds pretended to include the lake. The fact .that he owned the land around and adjoining the lake did not confer its ownership upon him any more than if the lake had been high, dry land, title to which was in another.
Parol evidence was admitted, over plaintiffs’ objection, for the purpose of showing that it was plaintiffs’ intention to transfer to Smith all of the land purchased from the levee board. Pretermitting a ruling on the court’s action in admitting said evidence in view of the plain and unambiguous recitals of the deed showing a transfer of only 17.96 acres of said land, the record shows an utter failure on the part of the defendants to prove any such intention. It is true that Smith testified, indirectly, that he thought he was reacquiring; not only the Magenta plantation, but also the 100 acres of lake land, but in this he is flatly contradicted by J. O. MeDade. These were the only witnesses who testified on the subject.
There is nothing in the point that plaintiffs left the land; that it was not assessed in their names; and that they never claimed it. It is not strange that plaintiffs did not remain on this low, wet land, but it does not appear that any one else took up a residence thereon during plaintiffs’ absence. While it was not assessed to plaintiffs, it was not assessed to Smith nor to either of the other defendants nor to any one else. It was practically of no value, which explains its absence fi’om the assessment rolls. It is not correct to say that plaintiffs never claimed the property. It is not shown that they abandoned it, and in 1916 they leased it to an oil company, and collected the lease money. Smith had knowledge of this lease, and made no protest, and expressed a willingness for plaintiffs to have all the land in the lake, and a reference to the lease shows that all of the lake was included therein, except the 17.96 acres previously trans *1025 ferred to Smith. Defendant, Caplis, also admitted that before he purchased from Smith he was told by J. G. McDade that plaintiffs claimed the land in this shallow lake.
Plaintiffs have asked for rent at the rate of $8 per acre for all of their lands found to be cultivated by the defendants. While we do not feel justified, in the present state of the record, to make an award on this demand, we are of the opinion that the district court was in error in not reserving plaintiffs’ right to assert said claim in proceedings to be hereafter instituted against the defendants. N
For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgments appealed from be amended by reserving to plaintiffs all their rights, if any they have, to claim and demand from defendants, in some future proceeding, a proper amount for rent or damages for all the lands owned by plaintiffs that shall be found to have been encroached upon and used by said defendants; in all other respects the said judgments are affirmed; costs of appeal to be borne by defendants.