GLADNEY, Judge.
Mrs. Marie S. Stephens and her children, Harry Scheen Stephens, Thomas Paxton Stephens, Jr., Frederick Leonard Stephens, and Leonard Waller Stephens II, instituted this, an action of jactitation or *675 slander of title, against the defendant, Luther A. Drake, asserting themselves to be the lawful owners in actual physical possession of certain described property and charging that the defendant was slandering their title thereto by claims of ownership. The defendant excepted to the action alleged upon by plaintiffs by denying the sufficiency of their possession, and by averring plaintiffs are without a cause or right of action. When these pleas were •considered, counsel for exceptor stated each was directed at the sufficiency of plaintiffs’ possession to support the character of action sued upon. The pleas were tried, overruled, and judgment was rendered, ordering the defendant to either disclaim title to said property or institute suit against plaintiffs herein in revindication for any rights which the defendant, Luther A. Drake, might have in said lands within sixty days after judgment became final.[1] Defendant answered plaintiffs’ petition, setting forth his claim of ownership, the legal effect of which was to convert the jactitation suit into a petitory action. Upon the issues thus presented the case was tried and judgment rendered recognizing plaintiffs to be the lawful owners of the property in controversy. From this decree defendant has perfected this appeal.
This controversy is the result of a dispute as to the possession and ownership of land as a consequence of Red River changing its course. Prior to the spring of 1945, plaintiffs and their authors in title owned Squirrel Point Plantation which was located on the east side or left descending bank of the Red River in Red River Parish, Louisiana. Part of this property was a finger of land, or peninsula, which was attached to the land of plaintiffs and was bounded on the north, west and south by Red River. It is conceded that this peninsula was alluvion created by the river and had been attached to the property of plaintiffs for many years. The trial judge, in a well-considered opinion, appropriately observed:
“This peninsula or finger of land was ‘made’ land or alluvion formed by the actions of Red River and had existed as an attachment to the other property of the plaintiffs for many years. The defendant owns land located at that time across Red River from the western end of the peninsula as well as across the river and south of the peninsula. Not before the spring of 1945, did the plaintiffs claim any land in this vicinity on the west side, or right descending bank, of Red River, and likewise the defendant claimed no land on the other or east side of Red River.
“Since time immemorial during the spring seasons Red River has been overflowing, changing its course, cutting new channels,, cutting off horseshoe-shaped lakes, straightening its course, bending its course, eating away at high banks on one side and making new lands on the other side. Such has been the actions of the impetuous Red River since the memory of man runneth not to the contrary. These are things of common knowledge to those of us who live in the great Red River Valley.”
In 1945 the Red River overflowed its banks in many places and during this overflow cut a new channel across the base of the peninsula and in succeeding years both ends of the old channel silted up completely, sealing it off from the flow of water from the Red River. The land in controversy herein at first embraced that within the former channel of the river, but the defendant no longer lays claim thereto, nor is it disputed that the ownership of the peninsula was vested in the Stephens prior to the creation of the new channel. In *676 explanation, counsel for defendant stated in brief:
“We must admit that under the provisions of C.C. Art. 518 and the case of Fitzsimmons v. Cassity in [La.App.], 172 So. 824, the Stephens Family are entitled to the bed of the river as it flowed immediatly before the 1945 high water, to indemnify them for what they lost to the new channel. However, they are not entitled to that sand bar that had built back from the westernmost channel the riker at one time had occupied before it started building up against the west bank, which sand bar according to the undisputed testimony had built up about of a mile from west to east. They must be confined to the channel as it existed just before the cut through.”
It is thus clear that appellant limits his claim to the detached strip of land which had been a peninsula and any alluvion that had become attached to his land. His position is stated by counsel to be:
“It is our contention that the widow and heirs of T. P. Stephens, Sr., deceased, cannot recover in this lawsuit under Article 509 of the Revised Civil Code, for the simple reason that the record shows without contradiction that the entire peninsula, prior to the 1945 cut off, was alluvion. That since the cut off, it is no longer attached to Squirrel Point Plantation but in fact is now attached to the property of Luther A. Drake.”
Codal Article 509 defines alluvion and declares it belongs to the owner of the soil situated on the edge of a river or stream. Appellants’ claim however, is predicated upon LSA-C.C. Art. 511, which provides:
“If the river or stream, whether navigable or not, carries away by a sudden irruption a considerable tract of land from an adjoining field, which tract of land is susceptible of being identified, by carrying the same on a field lower down, or on the opposite shore, the owner of the tract of land thus carried away, may claim his property, provided he does it within a year, or even after the year has elapsed, if the person, to whose land the soil thus carried away has been united, has not yet taken possession of the same.”
The trial court rej ected the argument so made, reasoning that:
“In the first place, no tract of land was moved or carried away by a ‘sudden irruption’ o.r otherwise, except, of course, the land taken by the action of the river in establishing a new channel. There is another good reason why RCC Article 511 has no application here. This article says ‘by carrying the same on a field lower down or on the opposite shore.’ The land that was ‘carried away’ if it can be said to have been carried away, never attached itself to any land of the defendant for RCC Article 518 provides:
“ ‘If a river or stream, whether navigable or not, opens itself a new bed by leaving its former channel, the owners of the soil newly occupied shall take, by way of indemnification, the former bed of the river, every one in proportion to the quantity of land he has lost.
“ ‘They shall again take their former property, if the river or stream returns to its former channel.’
“So, the plaintiffs, by operation of law, upon the giving of the land for the new channel acquired the old or former bed of the river. Therefore, if the land was carried away it never attached itself to any property of this defendant. Furthermore, apparently the defendant has abandoned any claim to the peninsula area.
“The evidence adduced on trial establishes that the defendant’s boundary on Red River was a steep bank, that it had been, in time past subject *677 to considerable caving, and he now contends that he is entitled to be adjudged the owner of the sand bar or alluvion that has built up adjacent to this bank which was formerly contiguous to Red River. The Court fails to find that any sand bar existed at the time of the break-through or the cutting of a new channel.”
As to the sand bar, one-half mile in length, which appellant claims was attached to his property before the 1945 cut-through, the evidence firmly establishes that when the river broke through the peninsula in 1945, its abandoned bed was contiguous to defendant’s property, where there was a high bank. This is clearly indicated by a map prepared by John S. Hy-ams, a licensed surveyor who surveyed the area in question in the year 1951. This witness testified that the old bed of the river silted up after the river had cut the new channel and there was no alluvion attached to the west bank prior to 1945. As pointed out in the opinion of the trial court, there did exist a sand bar to the east or in the direction of the present channel of Red River, but this also occurred after the river had cut the new channel. The situation under consideration is similar to that presented in Fitzsimmons v. Cassity, La.App.2d Cir., 1937, 172 So. 824, 829, as reflected in the following comment:
“The depth of the ‘Old River’ has been reduced materially by silt from the Red river and partakes more of the character of a shallow lake than it does a navigable stream. Being disconnected from any navigable stream, and surrounded by plantation lands, it can serve no useful purpose commercially. Anyway, article 518 of the Civil Code makes no exceptions in conferring ownership of abandoned rivers on those whose land has been taken by the new channel.”
Defendant’s claim to the peninsula is rejected, therefore, since the land in dispute was not carried away by a sudden irruption and did not attach itself to defendant’s property, so Article 511 is completely inapplicable, the case being governed by Article 518. If the sand bar claimed by defendant was formed after 1945, at which time the old river bed was no longer a navigable stream, but a lake with two closed ends, his claim to this land is likewise without merit, for it has long been the law of this state relating to the rights of riparian owners that accretion or alluvion is limited to lands abutting a river or other stream and have no application to lakes. LSA-C.C. Art. 509; Esso Standard Oil Company v. Jones et al., 1957, 233 La. 915, 98 So.2d 236.
Our attention has been called to our decision in Russ et al. v. Stephens et al., La.App. 2d Cir., 1956, 90 So.2d 501, an action in jactitation, wherein there was involved a controversy as to the sufficiency of the plaintiffs’ possession of the. same land that is the subject of dispute in the instant action. The case, however, is without significance forasmuch as possession is no longer an issue in this case. Although the insufficiency of the possession exercised by appellee was .re-asserted and argued by appellant, both in the lower court and on appeal, this is not a proper issue for this court’s determination. The defendant failed to suspensively appeal from the judgment of the trial court dismissing his exceptions, but instead resorted to a petitory action, the resort to which had the legal effect of recognizing plaintiffs’ possession. It was said in Louisiana Canal Company, Inc. v. Leger, 1959, 237 La. 936, 112 So.2d 667, 669-671:
“We are of the opinion that by this election he must be held to have acquiesced in and consented to the judgment’s finality, thus preferring a title contest with plaintiff, thereby effecting an abatement of the issue of possession.”
See also: Collier v. Marks, 1952, 220 La. 521, 57 So.2d 43, and Green v. Chamberlain, La.App. 1st Cir., 1952, 60 So.2d 120.
*678 Plaintiffs have tendered sufficient proof of title to their lands to which prior to 1945 the peninsula was attached, and so much is not controverted by appellants. Our holding is to the effect the plaintiffs did not lose title to the peninsula by reason of its separation from their property when the river changed its course in 1945, and that by reason of the new channel cut through their property they now have title to the old river bed as well. We further hold that the evidence fails to disclose the existence of any accretion or alluvion attached to defendant’s property, and, therefore, reject his claim to the one-half mile sand bar claimed in his petition.
The foregoing reasons disclose our approval of the judgment rendered herein by the trial court, recognizing and decreeing the plaintiffs to be the owners of the property in dispute and establishing the boundary lines of the old channel as that body of water existed prior to 1945. It follows, therefore, that there should be judgment herein in favor of the plaintiffs, Marie S. Stephens, Harry Scheen Stephens, Thomas Paxton Stephens, Jr., Frederick Leonard Stephens and Leonard Waller Stephens II, and against the defendant, Luther A. Drake, decreeing said plaintiffs to be the true and lawful owners of the following described property situated in Red River Parish, Louisiana, to wit:
“Beginning at a point 12,111.17 feet East and 2,048.7 feet South of recognized Northwest corner of Section 16, Township 12 North, Range 10 West, Red River Parish, Louisiana, for a point of beginning, run thence along the west bank of Red River descending South 34 degrees West 1313 ft.; thence South 10 degrees West 867 feet.; thence South 10 degrees West 338.8 feet; thence South 10 degrees West 36 feet; thence South 6 degrees East 600 ft.; thence South 21 degrees East 325 ft.; thence South 49 degrees East 161.5 ft.; thence South 59 degrees 30 minutes West 164 ft.; thence South 47 degrees 15 minutes West 228 feet; thence South 45 degrees West 126.3 ft.; thence South 35 degrees 30 minutes West 266 feet; thence South 27 degrees 30 minutes West 251.5 feet; thence South 14 degrees West 296 ft.; thence South 54 degrees West 128.7 ft.; go South 12 degrees West 448 feet; thence South 39 degrees 15 minutes West 255.5 ft.; thence South 27 degrees 30 minutes West 603.4 ft.; thence South 52 degrees West 520.5 feet; thence South 71 degrees West 932 ft.; thence South 89 degrees 15 minutes West 346 ft.; thence South 73 degrees 30 minutes West 725.5 ft.; thence North 79 degrees 30 minutes West 255.6 feet; thence North 84 degrees 30 minutes West 224.5 feet; thence North 56 degrees West 172.9 ft.; thence North 60 degrees 30 minutes West 154.2 ft.; thence North 42 degrees 15 minutes West 454 ft.; thence North 34 degrees West 465 ft.; go North 21 degrees West 164.3 feet; thence North 9 degrees 15 minutes West 290.5 feet; thence North no degrees 15 minutes East 378.5 feet; thence North 11 degrees 45 minutes East 328.3 feet ; thence North 25 degrees East 574.7 feet; thence North 23 degrees 30 minutes East 295 ft.; thence North 35 degrees 45 minutes East 248.3 ft.; thence North 30 degrees East 179 ft.; thence North 37 degrees 45 minutes East 487.9 ft.; thence North 47 degrees East 448.4 ft.; thence North 64 degrees 30 minutes East 188.1 ft.; thence North 54 degrees 30 minutes East 216.7 ft.; thence North 61 degrees East 260.3 feet; thence North 49 degrees East 186.5 feet; thence North 51 degrees East 482 feet; thence North 53 degrees 15 minutes East 911 feet; thence North 64 degrees 45 minutes East 617.5 feet; thence North 76 degrees 30 minutes East 274.7 feet; thence North 65 degrees 45 minutes East 1167.7 feet; thence North 62 degrees '53 minutes East 883.3 feet; to the place of beginning.”
*679 And, as such, entitled to the full and undisturbed possession thereof.
It is further ordered that the defendant, Luther A. Drake, deliver possession of said property to the plaintiffs, and that he pay for all costs of this suit.

. In our system of civil law a revindication action is one by which a litigant demands a restoration of a thing of which he claims to be owner and is in the form of a petitory action in which he must make out his title to the realty. Cooney v. Blythe Company, Inc., La.App. 1st Cir., 1941, 200 So. 517.