324 So.2d 619 (1975)
R. D. FORNEA CO., INC.
v.
Eddie L. FORNEA.
No. 10459.
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
Rehearing Denied January 12, 1976.
Writ Refused February 11, 1976.
*620 Edward F. Griffis and Richard F. Knight, Bogalusa, for appellant.
Jim W. Richardson, Bogalusa, for appellee.
Before SARTAIN, J., and BAILES and PICKETT, JJ., Pro Tem.
BAILES, Judge Pro Tem.
In this boundary action, the plaintiff seeks to have declared, as its easternmost boundary in Section 22, Township 2 South, Range 14 East, Washington Parish, Louisiana, the middle of Horseshoe Lake. The defendant asserts that the true boundary between these properties is the western edge of the waters of that lake. The case was tried on the merits on November 10, 1965, and an appeal thereafter perfected by both plaintiff and defendant. We reversed, however, and remanded the matter to the trial court for the compliance by the court appointed surveyor with certain technical formalities. See 208 So.2d 371 (La.App.1st Cir. 1968). On remand, the trial judge to whom the case was docketed, upon receiving the surveyor's additions to his prior work, affirmed the former judgment of that court by adopting the opinion previously rendered by the district judge who originally heard the case.
The appealed judgment supports the defendant's contentions and concluded that the correct boundary between these properties is the westerly edge of the waters of Horseshoe Lake. We affirm.
This protracted litigation involves the ownership of a body of water known as Horseshoe Lake located in Sections 22 and 48 of Township 2 South, Range 14 East, Washington Parish, Louisiana.
The plaintiff owns several hundred acres in those sections and in Section 44 and part of its eastern boundary is Horseshoe Lake which was formerly a part of the Pearl River which changed its course to the east at an unspecified time. The defendant's acreage lies to the east of the plaintiff's holdings.
The plaintiff's title is set out in a lengthy property description and provides for an eastern boundary containing numerous calls and distances. Particularly pertinent to these proceedings is the following:
"* * * 53¼ deg. W. 2 chains; N. 36½ deg. W. 3.50 chains to where same *621 intersects Horseshoe Lake proper; thence by traverse around the south and west side of said Lake * * *."
The defendant's property description contains these provisions:
"* * * Containing 200 acres more or less or all lands contained within the following boundaries, to-wit: Bound north and east by Pearl River and west and south by lands of vendor herein. Conditional lines as follows: Commencing at the month of Sandy Slough on Pearl River running southwest to Horseshoe Lake to Horseshoe Drain down said Horseshoe Drain to Pearl River thence up the River to place of starting being same land acquired by vendor from Robert Daniel."
The plaintiff contends, initially, that, since neither description specifically calls for the ownership of the lake, the common ancestor in title of these parties intended the lake to be a joint boundary and that the owners of each side were to own to the center line. As alternative contentions, it argues, first, that this body of water is, in fact, a nonnavigable stream with title being in the riparian owners to the center line; it also maintains, as a third possibility, that this was, in time past, a navigable body of water with ownership remaining in the State of Louisiana.
The trial court concluded that this body of water was not a stream but was a non-navigable lake and in reviewing the jurisprudence of this state which has dealt with the rights of riparian owners found no precedent in this jurisdiction for declaring that the ownership of property adjacent to a privately owned, non-navigable lake conferred any rights to the bottom of that lake. He further determined that where property is bounded by meandered water, as here, unless a clear intention to the contrary is expressed, the water and not the meander line forms the boundary.
The evidence in the record before us preponderates to the effect that this body of water is a lake. The survey maps and title descriptions all picture and describe it as such, as did the witnesses who testified herein. Although there are some indications that there may be some flow from and into the Pearl River at high water times through connecting sloughs and drains, it is clear that, except for those unusual occasions, it maintains the features commonly associated with a lake as that term has been jurisprudentially explained and defined. State v. Placid Oil Company, 300 So.2d 154 (La.1974).
By the very terms of plaintiff's title, its eastern boundary in this vicinity calls for certain measurements to "where same intersects Horseshoe Lake proper; thence by traverse around the south and west side of said Lake." This description, emanating from a common ancestor, does not contemplate ownership of the lake itself.
The Civil Code contains certain provisions specifically dealing with rivers and streams. See Article 509 et seq. However, our jurisprudence has repeatedly recognized that those Civil Code provisions do not apply to lakes. See Esso Standard Oil Co. v. Jones, 233 La. 915, 98 So.2d 236 (1957); Stephens v. Drake, 134 So.2d 674 (La.App.2nd Cir. 1961).
The ownership of the entirety of a non-navigable lake by an adjacent landowner is not inconsistent with the laws of this state. As we have previously noted herein, a reading of the wording and terminology of the plaintiff's deed shows that it has no claim to the lake within the four corners of that instrument, as it states only that their property traverses around the south and west side of the lake. The defendant's description, however, while not drawn in the most clear and specific terms, does not exclude ownership of the entirety of the lake. A comparison of its title with that of plaintiff's compels the conclusion that the lake is totally within the ownership *622 of, and was conveyed to, the defendant. We find no indication in these acts of conveyance that their ancestor in title intended the lake to be a joint boundary. In McDade v. Caplis, 154 La. 1019, 98 So. 625 (1924), the court had before it a matter similar to the case at bar. In disposing of an argument apparently like that advanced by plaintiff here, the court said:
"* * * It is also shown that, when Smith acquired from other parties all the land around this lake, the properties were described as fractional quarters and as lying east or west or south of Half Moon Lake. None of his deeds pretended to include the lake. The fact that he owned the land around and adjoining the lake did not confer its ownership upon him any more than if the lake had been high, dry land, title to which was in another."
We also conclude that the opinion of the trial court that the proper boundary to be established is the westerly edge of the waters of the lake is not manifestly erroneous. Unless a clear intention to the contrary is expressed in the act of conveyance, the water line will be regarded as the boundary where meandered water is present. State v. Aucoin, 206 La. 787, 20 So.2d 136 (1944). We think that principle to be applicable here, as no contrary intention is expressed in either description.
The record is devoid of any evidence whatsoever as to ownership of this body of water being in the State of Louisiana. To the contrary, all of the evidence submitted by the parties herein supports private ownership, which requires that the appellant's argument in that regard must be dismissed.
The defendant has filed in this court a peremptory exception of nonjoinder of an indispensable party based on the fact that the named plaintiff has sold its property and there has been no substitution of the present owner as a party plaintiff. By joint motion of all parties this defect now has been cured. The present owner, Ellis Clairain, is substituted as the party plaintiff.
For the foregoing reasons, the judgment appealed is affirmed, at plaintiff-appellant's cost.
Affirmed.