## UNITED STATES v. LAMBETH.

### No. 12026.

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1949.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Fred J. Neuland and James P. Garland, Sp. Assts. to Atty. Gen., Henry L. Hess, U.S. Atty., and Floyd D. Hamilton, Asst. U. S. Atty., Portland, Ore., for appellant

Arthur S. Vosburg and William H. Hedlund, Portland, Ore., for appellee.

Before HEALEY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This action was brought for a refund of taxes assessed under 26 U.S.C.A. § 1700 which provides for a cabaret tax on amounts collected for admissions, refreshments, service and merchandise by establishments furnishing a public performance for profit.[1] The tax was assessed against appellee as an individual upon receipts obtained as manager of the so-called "Cozy Club" for the period from May 1, 1943 to July 31, 1944. The tax amounted to $6,813.97.

The "Cozy Club" was incorporated in Oregon in 1929 as a non-profit organization. For some time prior to 1941, it had been managed by one Church who received for his "services" a straight salary, plus further compensation as rental for certain equipment used by the "club." The organization at this time operated under a "Service License"[2] which permitted the licensee to mix and prepare drinks from liquors furnished by patrons and requires the licensee to serve the public generally.[3] Appellee bought Church's interest and equipment and continued to lease the same to the club which was renamed the "La Fiesta" and its location changed. Appellee was entitled "Secretary-Treasurer" and acted as manager. She was personally responsible for *all* expenses and received *all* the profits derived from slot machines, checkroom, etc., and from the sale of food and mixing of drinks, as "salary" and rental. Appellee furnished music from a "juke box" but dancing was not permitted under this "Service License."

In September, 1943, a restaurant license was obtained from the same State authority.[4] This license also contemplated service to the general public.[5] It is admitted that at all times pertinent to this case the enterprise did not have a "Club License."[6]

■ There can be but little question but that appellee was engaged in the operation of a business for personal profit. Her activities fall neither within the normal connotation of the term "club"[7] nor within

[1] "Sec. 1700. Tax. There shall be levied, assessed, collected, and paid— * * * (e) (1) * * * of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The term 'roof garden, cabaret, or other similar place' shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. * * *

"(2) By whom paid. The tax imposed under paragraph (1) shall be returned and paid by the person receiving such payments."

[2] Oregon Laws 1941, c. 464, Section 2: "The following license may be granted by the Oregon liquor control commission under the terms and conditions for granting licenses conferred upon the Oregon liquor control commission by the Oregon liquor control act, * * * and such license may be denied, suspended or revoked by the Oregon liquor control commission for the reasons specified in the Oregon liquor control acts, * * *."

"*Service license:* A service license shall permit the mixing, storing or serving of alcoholic liquor by the licensee; provided, however, that such license shall not permit the sale of any alcoholic liquor. * * *"

[3] Regulation 13(c) of the Oregon Liquor Control Commission provides: "The place of business of a licensee holding a service license shall be open to the public during the business hours maintained by such licensee."

[4] O.C.L.A. Sec. 24-119.

[5] O.C.L.A. Sec. 24-118(7) and Sec. 24-103(4).

[6] Application for such a license was refused in July, 1944, on the ground that the applicant did not meet all the requirements.

[7] The word "club" is defined in Webster's New International Dictionary (Second ed., 1948), p. 509, as follows: "6. An association of persons for the promotion of some common object, as literature, science, politics, good-fellowship, etc., esp. one jointly supported and meeting periodically. Membership is usually conferred by ballot, and carries the privilege of exclusive use of club quarters." Funk & Wagnalls' New Standard Dictionary (1947 ed.), p. 506: "An organization of persons who meet for social intercourse or other common object, the members of which are usually limited in

812

Oregon statutory definition.[8]

■ The laws of Oregon are entitled to respectful consideration and under our form of government, the relevancy of local laws should always be considered.[9] However, in a purely Federal field, Congressional purpose and intentions are paramount.[10] The application of a Federal statute may be conditioned upon a status determined by local law, but such is not the situation here. The issue to be determined was whether the precise nature and character of appellant's operations during the tax period produced income which, under the terms of the applicable taxing statute, justified and required the tax assessment levied against her. It thus became the duty of the trial court to weigh and appraise the facts concerning these operations as disclosed in the evidence and testimony, and upon this fact basis determine whether the tax was validly assessed. Compare Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 286, 287, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, and Commissioner of Internal Revenue v. Culbertson, 69 S.Ct. 1210.

■ Thus the sole issue before us is whether the evidence rationally supports the finding that appellee, in her conduct of this business enterprise, did not serve the public, for such is the requirement of the Federal taxing statute here involved. Merely because appellee admits violation of Oregon laws does not make her subject to Federal taxes. We hold the finding to be so supported.

There is abundant evidence that, in spite of State license requirements, appellee, during the tax period here involved, refused to admit persons not having "membership" cards. Expanded patronage being necessary to continued operation, active solicitation of new "members" was undertaken although "admittance" cards were apparently accessible to almost any one who desired to

number and chosen by ballot; * * *." Compare Smyth v. Calif. State Automobile Association, 9 Cir., 175 F.2d 752.

8 O.C.L.A. Sec. 24-103(2): "The word 'club' means an association of persons, whether incorporated or unincorporated, for the promotion of some common object (not including associations organized for any commercial or business purpose the object of which is money profit), owning, hiring or leasing a building, or space in a building, of such extent and character as in the judgment of the commission may be suitable and adequate for the reasonable and comfortable use and accommodation of its members and their guests and provided with suitable and adequate kitchen and dining-room space and equipment, implements and facilities, and employing a sufficient number of servants or employees for cooking, preparing and serving food and meals for its members and their guests; *provided, that no member or any officer, agent or employee of the club is paid, or directly or indirectly receives in the form of salary or other compensation, any profits from the disposition or sale of alcoholic liquor to the club or to the members of the club or its guests introduced by members, beyond the amount of such salary as may be fixed and voted at annual meetings by the members or by its directors or other governing body, and as shall, in the judgment of the commission, be reasonable and proper compensation for* the services of such member, officer, agent or employee." (Emphasis supplied.) See also Sec. 24-118(9).

9 Compare 28 U.S.C.A. § 725: "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." This is now effective as § 1652 of the revised Title 28. See Davis Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 154, 64 S.Ct. 474, 88 L.Ed. 635; City of Yonkers v. United States, 1944, 320 U.S. 685, 690–691, 64 S.Ct. 327, 88 L.Ed. 400; Palmer v. Commonwealth of Massachusetts, 1939, 308 U.S. 79, 84, 60 S.Ct. 34, 84 L.Ed. 93; Poe v. Seaborn, 1930, 282 U.S. 101, 51 S. Ct. 58, 75 L.Ed. 239.

10 Lusthaus v. C.I.R., 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; C.I.R. v. Tower, 1946, 327 U.S. 280, 288, 66 S. Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Morgan v. Commissioner, 1940, 309 U.S. 78, 80–81, 626, 60 S.Ct. 424, 84 L.Ed. 585; Helvering v. Stuart, 1942, 317 U.S. 154, 160–165, 63 S.Ct. 140, 87 L.Ed. 154; City of New York v. Feiring, 1941, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333; United States v. Pelzer, 1941, 312 U.S. 399, 402–403, 61 S.Ct. 659, 85 L.Ed. 913; Black v. C.I.R., 9 Cir., 1940, 114 F.2d 355, 358.

"join." A liberal guest policy was inaugurated and so-called "dues" were used to repay appellee for her expenses in remodeling and decorating the premises.

Because of the exclusion of the general public, the Oregon Liquor Control Commission revoked the restaurant license on January 21, 1945. The evidence revealed that appellee subsequently operated the premises as an individual.

On the evidence adduced, the trial judge found that at all times here relevant appellee was not serving the public and was thus not furnishing a public performance for profit within the definition of the Federal taxing statute. The two witnesses for the Government failed to convince him otherwise and he ordered judgment for appellee in the amount of the refund, plus interest.

On this record we think that the case falls within Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in part providing: "Findings of fact shall not be set aside unless clearly erroneous, * * *."[11] Clear error calling for reversal is not present and the Government's presentation fails to convince us otherwise.

Affirmed.

---

[11] Wittmayer v. United States, 9 Cir., 1941, 118 F.2d 808, 811.