CLUB RAMON, INC., Appellee,

v.

UNITED STATES of America, Appellant.

No. 8412.

United States Court of Appeals Fourth Circuit.

Argued Oct. 11, 1961.

Decided Nov. 15, 1961.

5. That was a case reviewing an order of the Commission requiring a concern to cease and desist from certain advertising.

John F. Palmer, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., and Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., on the brief), for appellant.

LeRoy Katz, Bluefield, W. Va. (Katz, Katz & Kantor, Bluefield, W. Va., on the brief), for appellee.

Before SOPER, BOREMAN and BELL, Circuit Judges.

SOPER, Circuit Judge.

The United States appeals from a judgment of the District Court, based on the verdict of a jury, that the Club Ramon, Inc. is entitled to a refund in the amount of $386.65 for taxes paid by it under Section 1700(e) of the Internal Revenue Code of 1939, as amended by Section 622 of the Revenue Act of 1942, Chapter 619, 56 Stat. 798, 26 U.S.C. § 1700(e).[1]

The statute imposes a tax of 20% on amounts paid for admission or refreshment at "any roof garden, cabaret or other similar place furnishing a public performance for profit". The quoted phrase is defined to include "any room in any hotel, restaurant, hall or other public place where music and dancing privileges * * * are afforded the patrons in connection with the serving or selling of food [or] refreshment." The issue submitted to the jury was whether the business of the Club was conducted in a public place as defined in the statute and the jury found for the plaintiff and against the United States.

This appeal is based upon the rejection of a motion of the United States offered at the conclusion of the evidence for a directed verdict on the ground that there is no showing in the evidence that the Club Ramon was a bona fide club operated in a private place but on the contrary was an enterprise conducted for profit in a public place where its patrons were afforded entertainment for which they paid. In our judgment, based on the evidence outlined below, the motion for directed verdict should have been granted.

Club Ramon, Inc. is a corporation established under the laws of West Virginia on October 13, 1951. It is, in effect, a one-man enterprise owned by Raymond O. Mattee and carried on by him for profit in Bluefield, W. Va. At its inception 20 shares of stock of the par value of $100 per share were issued of which 18 shares were issued to Mattee, 1 share to his wife, and 1 share to Dudley E. Cruise who works regularly as a clerk with the Bluefield Supply Company during the day but also acts as assistant to Mattee in the evening in the operation of the Club Ramon. These three persons constituted the Board of Directors of the corporation. Mattee became the President and Treasurer, his wife, Secretary, and Cruise, Vice President. The wife died in 1956 and the position of Secretary has not been since filled.

The certificate of incorporation states that the purpose of the corporation is to operate "a private dinner and supper club for the service of food and beverages." The by-laws of the corporation provide that the club shall be operated as a private club for the use of its members and their guests and that the Board of Directors shall prescribe the requirements for membership and issue appropriate identification to the members. No such regulations, however, have been

---

1. The amount sued for represents the payment of excise taxes for the month of October 1951 which was made in order to test the application of the tax to the taxpaying corporation. The total liability assessed against the taxpayer for the period from October 1, 1951 to December 31, 1957 was $24,729.91, consisting of $17,254.98 in taxes, $4,233.98 in penalties and interest of $3,240.95.

passed and no attempt has been made to organize a private club in the ordinary meaning of that term. The selection of members has been entirely in the hands of Mattee and the evidence of membership is a membership card issued by Mattee bearing the member's name. The privileges of members consist in the right to have access to the Club and to partake of its entertainment for a price but no meetings of the members are held and the members have no voice in the selection of members, no control of the operation of the Club, and no share in the profits. In short, as witnesses for the taxpayer testified, the Club is Mattee and the profits are his.

The place of business is open after 5:30 P.M. in the evening. The name Club Ramon appears on the canopy over the sidewalk which shelters the entrance. The rooms include a lounge, reading and television room and a dining room containing a small area for dancing. Music is provided by a tape machine, a juke box and an electric organ. Members are permitted to consume alcoholic drinks on the premises which they may provide themselves and keep in a locker if they desire, or may purchase by the drink from the Club. In these respects the enterprise is similar to the business organization commonly known as a night club which is defined in Webster's New Collegiate Dictionary as "a commercial establishment operating at night to supply food and entertainment to its customers." In fact, the telephone company in Bluefield lists the taxpayer as a night club in its classified directory. Mattee and Cruise testified that they had no knowledge of this listing and that the business was not advertised in any other way.

The contention of Mattee that he does not furnish a public performance and does not operate a public place for entertainment is based almost entirely on restrictions imposed by him upon entrance to his establishment. The outside door of the restaurant is locked and opened only in response to a buzzer and usually but not always admission is restricted to persons bearing a membership card inscribed with their names and to their guests. Approximately 400 membership cards have been issued to residents of the city who are primarily but not exclusively local business or professional persons who desire the kind of facilities for food, drink and entertainment which the Club furnishes. The cards entitle the holders and the members of their families to admission to the Club. No formal application for membership is required. It is granted upon the recommendation of a member or upon the request of an applicant or upon the acceptance of an invitation to become a member issued by the management. In case of doubt as to the suitability of an applicant other members of the Club may be consulted before the membership card is issued but usually no such investigation is needed. Admission of non-members is granted at the request of other members who may or may not accompany the non-member. This practice is followed in extending the privileges of the Club to the patrons of a motel in the city upon the request of the operator of the motel who is a card-carrying member of the Club.

Reason for restricting admission to the Club is found in the fact that the operations of the business involve violations of the liquor laws of West Virginia. The sale of alcoholic liquors at wholesale and retail in the state is a state monopoly. They may be sold at retail only through state stores and agencies of the West Virginia Liquor Control Commission. West Virginia Code of 1955, Section 5907(29), Code, 60–3–29. A person may not drink alcoholic liquor in a public place or tender a drink of alcoholic liquor to another person in a public place. Section 5907(90), Code, 60–6–9. If the business of Club Ramon as above described be regarded as conducted in a public place within the meaning of the West Virginia statutes the use of alcoholic liquor by the patrons on the premises is a violation of the law. That the sale of alcoholic liquors regularly takes place is evidenced by the fact that

the Club has acquired a stamp denoting the payment of a special tax to the United States which is required of retail dealers in liquor under 26 U.S.C. §§ 5121 and 5122.

■ In view of all these circumstances we conclude that the Club Ramon is so clearly a public place within the meaning of the Federal Statute that a verdict for the United States should have been directed. The pretense set up in the charter and in the by-laws of the corporation that the organization is a private club has no foundation in fact and is not now urged in support of the judgment of the District Court. Hence, the question is whether a restaurant, which is operated by its owner for profit and for this purpose is open to such members of the general public and their families, without specific qualification, as the proprietor may deem it safe and prudent to admit to a place where violations of the state law are carried on, must properly be described as a public place within the meaning of the statute. We think that the answer must be in the affirmative when, as in this case, the sale of the privileges of the place was the lifeblood of the business and a large section of the general public was served. Actually the restrictions involved in the card-carrying practice were no more severe than those imposed by other public places of entertainment from which, for one purpose or another, certain classes of the general public are customarily excluded.

■ A contrary conclusion was reached by the court in United States v. Lambeth, (9 Cir.1949), 176 F.2d 810, upon which the District Judge in the pending case relied.[2] Therein it was held that a restaurant operating nominally as a club but maintained by an individual for his own profit and engaged in violation of the state liquor laws was not a public place although it was accessible to almost anyone who desired to join. We are not in accord with this holding for it seems to us to ignore realities which are apparent to the ordinary mind. It is, of course, the duty of the trial judge to leave issues of fact to the determination of the jury but he is not obliged to submit issues as to whose outcome no reasonable doubt can be entertained. "And where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.' * * * The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Such a practice, this court has said, not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the ends of justice.' * * * The scintilla rule has been definitely and repeatedly rejected so far as the federal courts are concerned. * * * " Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 395, 77 L.Ed. 819. And see Wachovia Bank and Trust Co. v. United States (4 Cir.1961) 288 F.2d 750, 757; Wright v. Grain Dealers Nat. Mut. Fire Ins. Co., (4 Cir.1950) 186 F.2d 956, 958.

Cases similar to the instant one may well arise in which the evidence presents the factual question, appropriate for jury resolution, as to whether the activities sought to be taxed are public or private. The determination in each

2. Refunds of excise taxes paid under Section 1700(e) have been granted by District Courts in the following cases in which the facts are more or less similar to those in the case at bar: Naylor v. United States, (D.C.S.D.Cal.1952) 102 F. Supp. 309; Shrader v. O'Malley, (D.C. Neb.1954) 119 F.Supp. 627; Bomber Club, Inc. v. Brodrick, 54–2 U.S.T.C. Par. 49,054; Southland Club, Inc. v. Brodrick, 56–2 U.S.T.C. Par. 9931; Uptown Club, Inc. v. United States, 58–1 U.S.T.C. Par. 15,154; Wynn's Trio Club, Inc. v. Koehler, 58–2 U.S.T.C. Par. 15,-159.

case must depend on the force and character of the evidence there presented. What we hold here is that the facts in this case establish beyond reasonable dispute that the Club Ramon, Inc., in its organization and operation, is no more private than the ordinary discriminating restaurant, and that it is, therefore, liable for the taxes imposed.

The judgment of the District Court is reversed with direction to dismiss the complaint.

Reversed.