**CLUB MARTINIQUE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 67–315.

United States District Court
W. D. Oklahoma.

Sept. 13, 1968.

Gus Rinehart, of Rinehart, Morrison, Cooper & Stewart, Oklahoma City, Okl., John E. Marshall, Oklahoma City, Okl., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., John O. Jones, Gene A. Castleberry, Tax Division, Dept. of Justice, Fort Worth, Texas, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EUBANKS, District Judge.

This is an action for refund of taxes alleged to have been erroneously assessed against and collected from Club Martinique for the second quarter of 1964, pursuant to Section 4231(6) of the Internal Revenue Code of 1954 (26 U.S.C. § 4231, since repealed). The Government, in addition to insisting that the tax was properly and legally assessed has counterclaimed seeking judgment against taxpayer because of its non-payment of the same tax for other years or portions of years. The specific amounts involved are immaterial at the present time for the reason that the parties have stipulated that they could and would agree as to amounts after a decision of this Court as to who should prevail.

The question before the Court is whether or not the taxpayer furnished a "public" or "private" operation. If the taxpayer club was conducted as a "private" performance or operation the cabaret tax was illegally assessed against it, but if the taxpayer conducted a "public" performance the taxes were properly imposed.

Club Martinique was incorporated in March 1963. The incorporators were Patricia Hessel, Barbara DeLozier, and Carol DeLozier. Patricia Hessel was President, Carol DeLozier, Vice-President, and Barbara DeLozier was Secretary-Treasurer. At all times pertinent hereto the club was operated by Patricia Hessel and her husband, Harold Hessel. All proceeds from the club were retained by Mr. and Mrs. Hessel and no meetings of the officers were ever held after the club was incorporated and no one had any voice in the policies of the club except Patricia Hessel. Membership in the club could be obtained by the filling out of an application and the payment of $2.00 per annum as dues. These dues also became the private property of the management. Upon obtaining membership a person could enter the club alone or with guests and have liquor served from the member's private bottle with the club charging $.35 for mixing each drink. The only food served by the club was pizza and bacon sandwiches. A member could propose a new member, but management and employees had the

final say so as to whether the applicant would be accepted or rejected. Non-member employees could and did approve applications for membership. The membership application cards introduced as exhibits reflect that in some instances a membership was issued without the signature approval of anyone. Other application cards indicate that a membership card number is shown to have been issued applicants who were shown to be rejected. There were no written or other meaningful qualifications for membership and virtually any person of good demeanor and appearance could become a member of the club. There is no evidence that non-members were allowed to come into the club unless accompanied by a member except in a few rare instances when a non-member might be admitted but not served if he stated he was waiting to be joined by a named member. Membership in Club Martinique carried with it no special privileges except that of being allowed to gain admittance, drink, eat, and dance. No formal or informal meeting of the members was ever held and the members had no voice in club management excepting only the right to make suggestions which may or may not be followed. The club had a juke box which was played for dancing, but no live band. The club had a pool table and a bowling machine for additional entertainment. The only record of club membership was the alphabetical application card index. Testimony was introduced to the effect that $2.00 was collected from members each year although an examination of the cards introduced in evidence fails to show any renewal of membership; some of the cards do reflect that membership was rejected after the same was originally accepted. The taxpayer may have been using the term "reject" and "cancel" interchangeably. The club maintained an entrance way sign reading "Private Club—Members Only". There was an electric buzzer at the door which door was kept locked so as to restrict admittance to members and guests of members. The club was open for business from about noon until 2:00 AM on weekdays and until 4:00 AM on weekends and holidays.

I believe that the performance or operation of the Club Martinique was essentially a "public" operation as distinguished from the "private" operation. In Club Ramon Inc., v. United States, 4 Cir., 296 F.2d 837, the Court indicated that in making a determination of whether a club operated as a private or public one, it is proper to consider, among other factors, the fact that the selection of members was entirely in the hands of management and that it was proper to take into account that membership granted no privilege except the right to have access to the club and to partake of its entertainment for a price, and that it was appropriate to consider that no meetings of the members were held and that members have no control in the operation of the club and no share in the profits. In United States v. Zarzaur, 5 Cir., 381 F.2d 981, the Court noted that in determining whether the operation was public or private it was proper to consider the fact that no meetings of the members were ever scheduled and that the officers and directors were selected informally and had limited, if any voice in the operation of their "private" facility. In Zarzaur, the Court criticized United States v. Lambeth, 9 Cir., 176 F.2d 810, and other district court cases where (in the criticized cases) it had been held that when admittance was restricted to members and guests the operation was essentially private even though conducted for the sole profit of management and even though admittance cards were available to almost anyone who desired to join. In the case at bar the operation was a public one even though admittance was restricted to members and guests of members because the restrictions on membership were no more severe than those imposed by most other places of entertainment or the better restaurants where certain classes of the general public are customarily excluded. The fact that non-member employees could and did ap-

prove new membership applications is indicative of the ease of obtaining membership in Club Martinique as is also the fact that no meaningful qualifications for membership were prescribed.

I therefore conclude that plaintiff's complaint should be and is denied, and judgment will be entered for the defendant on its cross complaint.

Counsel for the Government will prepare formal judgment in accordance with the foregoing.