[Crim. No. 6363. Fifth Dist. June 5, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ROCKY DEAN LABOA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*See footnote 2, page 118.

COUNSEL

John M. Hanley, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi, Anthony L. Dicce, Ward A. Campbell and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HAMLIN, J.**—Following a jury trial, defendant was convicted of robbery (Pen. Code, § 211)[1] and first degree murder (§§ 187, 189). The jury found that a principal was armed with a firearm in the commission of the robbery and the murder (§ 12022, subd. (a)) and that the murder was committed in the course of the robbery as alleged in the special circumstances (§ 190.2, subd. (a)(17)(i)). Defendant was sentenced to life without possibility of parole for felony murder with special circumstances and to five years for robbery plus a one-year enhancement for a principal being armed with a gun. The six-year sentence for robbery and a principal being armed with a gun was stayed pursuant to section 654. Defendant appeals.

On appeal defendant contends the trial court erred in denying his motion to dismiss for failure to bring his case to trial within the applicable time limits and in allowing the prosecution to impeach him with evidence of two prior burglary convictions. Additionally, he urges *Doyle* (*Doyle* v. *Ohio*

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

(1976) 426 U.S. 610, 619 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240]) error; that the special circumstances allegation must be set aside because of the prosecution's failure to introduce evidence that he intended to kill the victim of the robbery and the murder; and that under *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697] his punishment for first degree murder must be reduced. We conclude that under *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] it was error to sentence defendant to life imprisonment without possibility of parole; that *Carlos* should be retroactively applied to this case; and that, accordingly, the special circumstances penalty must be set aside and judgment reversed insofar as it relates to penalty. We reject defendant's other contentions and affirm his conviction of robbery and felony murder.[2]

## FACTS

In late November 1980 defendant, Michael Denney, Danny Carl and Michelle Keener discussed a sale of guns in the possession of Denney and defendant to Morones, who lived in a farm labor camp in the Hanford area. Out of this discussion evolved a plan to rob Morones in his trailer house after Keener engaged in an act of prostitution with him.

Defendant, Denney, Carl and Keener left Hanford in Keener's car to go to Morones' trailer house. Before leaving, Carl removed the vehicle's license plates. The men took the guns with them. While en route to the trailer house, Denney was playing with a handgun and pointing it at the back of Keener's head while she was driving. Both Keener and defendant told Denney to put the gun away. A short time later Keener told Carl to tell the others not to rob Morones, that they would only sell him the guns. Carl never complied.

Upon arrival at Morones' residence, Keener went inside. After a brief talk, she had sex with Morones and was paid $10. Keener then cleaned up and began to get dressed. While Morones was still nude, defendant, Denney and Carl entered the trailer house. They ordered Morones down the hall to the bathroom. While Denney and Carl told the victim to lie down on the bathroom floor, defendant asked Keener where Morones kept his money. Keener took down a box from a shelf in Morones' closet and, after going through it, removed and handed to defendant a plastic baggie. She was removing a second baggie when she heard a shot and Carl yelling that Denney had shot Morones. Defendant, Denney, Carl and Keener then ran from the trailer to Keener's car and drove from the area.

---

[2]Parts I through V of this opinion are not published, as they do not meet the standards for publication contained in rule 976(b) of the California Rules of Court.

While driving in Keener's car, Denney said the shooting was an accident. Some distance away they stopped alongside a wheatfield. There Carl replaced the license plates on the car and Denney and defendant buried the handgun. The shotgun and rifles were thrown into some bushes in a nearby ditch. Later they divided some $20 cash contained in one of the baggies Keener removed from the box while in Morones' trailer.

A few days after the robbery, Keener told Carl to move out of her home. She then went to work at a neighborhood convenience store. Several months later she confessed to two officers of the Hanford Police Department and gave a taped statement. After Keener testified at the preliminary hearing, she was given immunity. Through Keener the murder weapon was located.

Defendant, Denney and Carl were arrested. Defendant and Denney were transported from the Hanford jail to the jail in Kern County in a sheriff's van. Before putting defendant and Denney into the van, a deputy sheriff planted a tape recorder for the express purpose of obtaining incriminating evidence. During the trip to Bakersfield, defendant and Denney were left alone in the sheriff's van. Their conversation during this period was recorded. The tape included statements indicating hopelessness in the face of what seemed overwhelming evidence against them and some talk about how they could "beat" the charges against them. The tape was played to the jury during defendant's trial.

### Defense Case

Defendant's evidence was directed toward proof of his diminished capacity and the absence of intent to rob Morones. He testified to heavy use of heroin since 1976 and his use of three balloons of heroin on the day before Morones was killed with continuing effects on the following day. Additionally, he testified he was never told that a robbery of Morones was going to occur. He offered evidence to impeach Keener and to corroborate his habitual heavy use of heroin and his use of heroin and the consumption of alcohol on the day of the robbery and killing.

### Discussion

I. *Was defendant denied a speedy trial?**

. . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote 2, *ante*.

II. *Did the prosecutor commit Doyle error?**

. . . . . . . . . . . . . . . . . . . . . . . .

III. *Was the evidence of defendant's prior convictions properly admitted?**

. . . . . . . . . . . . . . . . . . . . . . . .

IV. *Was the tape recording of defendant's conversation with codefendant during transportation between jails admissible?**

. . . . . . . . . . . . . . . . . . . . . . . .

V. *Should the special circumstances allegation be set aside?**

. . . . . . . . . . . . . . . . . . . . . . . .

VI. *Should defendant's conviction be modified under People v. Dillon?*

██ Defendant's final contention is that *People* v. *Dillon, supra,* 34 Cal.3d 441 requires modification of the judgment convicting defendant of first degree murder. We disagree.

The Supreme Court upheld the felony murder rule as a creature of statute, precluding judicial abrogation. (*Id.,* at p. 463.) Additionally, that court held that the rule does not deny due process of law by relieving the prosecution of the burden of proving malice, because malice is not an element of the crime of murder. (*Id.,* at pp. 475-476.) ██ The court's final holding, and the one with which we are directly concerned in this case, was that "the penalty for first degree felony murder, like all statutory penalties, is subject to the constitutional prohibition against cruel or unusual punishments (Cal. Const., art. I, § 17), and in particular to the rule that a punishment is impermissible if it is grossly disproportionate to the offense as defined or as committed, and/or to the individual culpability of the offender. [Citation omitted.]" (*Id.,* at p. 450.)

██ Before the *Dillon* court proceeded with an analysis of the defendant's individual culpability as shown by such facts as his age, prior criminality,

---

*See footnote 2, *ante*.

personal characteristics, state of mind, and of the totality of the circumstances surrounding defendant's commission of the offense, the court pointed out: "We recognized [in *In re Lynch* (1972) 8 Cal.3d 410 (105 Cal.Rptr. 217, 503 P.2d 921)] that 'Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty "out of all proportion to the offense" [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment.' (*Id.,* at pp. 423-424.) Undertaking to define that limit for future cases, we explained that the state must exercise its power to prescribe penalties within the limits of civilized standards and must treat its members with respect for their intrinsic worth as human beings: 'Punishment which is so excessive as to transgress those limits and deny that worth cannot be tolerated.' " (*People* v. *Dillon, supra,* 34 Cal.3d at p. 478.)

In *Dillon* the defendant was a 17-year-old high school student charged with first degree felony murder and attempted robbery. He and several of his schoolmates set out to investigate an illegal marijuana growing farm in the Santa Cruz mountains with the intent to take some of the marijuana. They made several unsuccessful visits to the marijuana farm during which they were directly warned to leave and not return. After recruiting reinforcements, they returned to the farm. During this visit, defendant panicked when he saw one of the guards carrying a shotgun and approaching him. When the guard came near, defendant began firing at him and killed him. The jury found defendant guilty as charged after having sent a note to the judge in the course of their deliberations asking whether it could return a verdict of second degree murder even if it found the killing occurred during an attempted robbery. The judge replied by rereading the felony murder instruction. The Supreme Court affirmed the attempted robbery conviction and modified the judgment as to the murder conviction by reducing it to second degree murder. (*Id.,* at pp. 484-488.)

The *Dillon* court was persuaded to reduce defendant's first degree murder conviction to second degree for the reasons that (1) the jury was reluctant to apply the felony murder rule to the facts of that case, (2) defendant was an unusually immature youth and did not foresee the risk he was creating, (3) defendant had had no prior trouble with the law, and (4) only petty chastisements were handed out to the six other youths who participated with defendant in the same offenses. (*Id.,* at pp. 487-488.)

In the instant case defendant was an active participant in a reasonably sophisticated plan to commit a nighttime robbery in an isolated rural area of Kern County. Defendant knew that guns would be used in the robbery. Moreover, he participated in the burglary through which the guns used during the robbery were stolen. Codefendant Denney accidentally fired the shot from close range that killed the victim. Defendant was not in that room at the time of the shooting.

Defendant was 21 years old on the date of the offenses with which he was charged. He was married and had a child. He had 13 referrals to the probation department as a juvenile for minor types of offenses and for being out of parental control. In 1978 defendant had pleaded guilty to two burglary counts and had been committed to the California Rehabilitation Center. On December 28, 1980, defendant was arrested for burglary and receiving stolen property and later was ordered to serve one year in jail for those offenses. Defendant was arrested on April 14, 1981, for the instant offenses. He was a habitual heroin user. He had been using drugs and drinking alcohol before the Morones robbery and killing, but his own testimony belied his contention that he did not knowingly participate in the robbery.

Except that Keener was granted immunity after she testified at the preliminary hearing, defendant's punishment differs little from the punishment suffered by the other participants in the crime. Carl received a 25-year-to-life sentence on the murder charge and 2 years for the robbery. Denney received 25 years to life after this court set aside the special circumstances allegation pursuant to *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131. (*People* v. *Denney* (1984) 152 Cal.App.3d 530 [199 Cal.Rptr. 623].) The circumstances of the crime suggest that defendant may have been somewhat less culpable than Carl and Denney. However, there is nothing to indicate in this case that the jury was reluctant to convict defendant of the offenses as charged or that the court believed that harsh results flowed from application of the felony murder rule.

After careful consideration of the totality of the circumstances relevant to the nature of the offense and defendant's individual culpability, we are not satisfied that defendant's sentence (after setting aside the finding of special circumstances) of 25 years to life is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at p. 424.) Moreover, defendant may well be released on parole at a much earlier date if the Board of Prison Terms finds sufficient circumstances in mitigation. (Cal. Admin. Code, tit. 15, § 2284) or if defendant earns available postconviction credits. (*Id.,* § 2290.) We therefore hold that the punishment imposed on defendant for the crime he committed is not cruel or unusual.

The judgment convicting defendant of robbery and first degree murder is affirmed. The finding of special circumstances elevating the murder to one requiring life imprisonment without possibility of parole is set aside. Therefore, the judgment is reversed insofar as it relates to penalty.

Franson, Acting P. J., and Andreen, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1984.