TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

```
        OPINION              :
                             :
            of               :
                             :
   JOHN K. VAN DE KAMP       :      No. 86-105
     Attorney General        :
                             :      MAY 19, 1987
   RODNEY O. LILYQUIST       :
   Deputy Attorney General   :
```

----------------------------------------------------------------

THE HONORABLE MILTON MARKS, MEMBER, CALIFORNIA SENATE, has requested an opinion on the following question:

Are medical facilities, including hospitals, clinics and physicians' offices, places where a blind person has a statutory right to be accompanied by a guide dog?

CONCLUSION

Medical facilities, including hospitals, clinics and physicians' offices, are places where a blind person has a statutory right to be accompanied by a guide dog to the extent of providing access equal to that of all or some members of the general public.

ANALYSIS

Civil Code section 54.2, subdivision (a),[1] provides:

"Every totally or partially blind person, or deaf person, or person whose hearing is impaired, or physically handicapped person, shall have the right to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1 without being required to pay an extra charge for the guide dog, signal dog, or service dog; provided that he shall be liable for any damage done to the premises or facilities by such dog."

The "places specified in section 54.1" cover a wide range of public accommodations and facilities:

"Blind persons, visually handicapped persons, deaf persons, and other physically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats or any other public conveyances or modes of transportation, telephone facilities, hotels, lodging places, places

---

1.  All references hereafter to the Civil Code are by section number only.

of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." (§ 54.1, subd. (a).)

The question to be resolved is whether medical facilities, including hospitals, clinics and physicians' offices, come within the terms of section 54.1 and thus are places where a blind person has a right under section 54.2 to be accompanied by a guide dog.

The places referred to in subdivision (a) of section 54.1 may be categorized as follows: "All

[1] common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or other public conveyances or modes of transportation,

[2] telephone facilities,

[3] hotels, lodging places,

[4] places of public accommodation, amusement, or resort,

[5] and other places to which the general public is invited."

To the extent that "other members of the general public" have access to these specified facilities, a blind person has a statutory right to be accompanied by a guide dog  so as to have "full and equal access."  Consistent with this provision is the limited exclusion in section 54.1 for areas restricted "alike to all persons."

If medical facilities are to be included within the places specified in section 54.1, they must be either "places of public accommodation" or "places to which the general public is invited."  Neither of these terms is defined for purposes of section 54.1.  Both are somewhat ambiguous when standing alone.

In interpreting the language of sections 54.1 and 54.2, we may rely upon several well-established principles of statutory construction.  The fundamental rule to be applied is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law."  (Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645.)  Moreover, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect."  (Moore v. Panish (1982) 32 Cal.3d 535, 541.)  Statutes relating to the same subject matter are to be read together insofar as reasonably possible.  (Fuentes v. Workers' Comp. Appeals Bd. (1976) 16 Cal.3d 1, 6-7.)

Sections 54.1 and 54.2 were enacted in 1968 (Stats. 1968. ch. 461, § 1) as part of a legislative scheme (now §§ 54-55.1) giving various rights to blind and other physically disabled persons.  (See People ex rel. Deukmejian v. CHE, Inc.  (1983) 158 Cal.App.3d 123, 131-132 Marsh v. Edwards Theatres Circuit, Inc. (1976) 64 Cal.App.3d 881, 886-887.)  The basic statutory goal is to grant disabled persons "the same right as the able-bodied to the full and free use of . . . public places."  (§ 54.)

Along with sections 54-55.1, the Legislature has enacted statutory schemes giving handicapped persons access to and use of public buildings constructed with public funds (Gov. Code, §§ 4450-4458) and public buildings constructed with private funds (Health & Saf. Code, §§ 19955-19959).  Also to be noted is the Unruh Civil Rights Act (§ 51), prohibiting all forms of arbitrary discrimination by a business establishment.  These various legislative schemes have been construed together.  (See People ex rel. Deukmejian v. CHE, Inc.,

<u>supra</u>, 150 Cal.App.3d 123, 131-135; <u>Marsh</u> v. <u>Edwards Theatres Circuit, Inc.</u>, <u>supra</u>, 64 Cal.App.3d 881, 887-890; 58 Ops.Cal.Atty.Gen. 512, 513-515 (1975); see also <u>Marina Point, Ltd.</u> v. <u>Wolfson</u> (1982) 30 Cal.3d 721, 731.)  As stated in <u>People</u> ex rel. <u>Deukmejian</u> v. <u>CHE, Inc.,</u> <u>supra</u>, 150 Cal.App.3d 123, 135:

"The prohibition against discrimination of the handicapped within Civil Code section 54 et seq., the enactment of Government Code section 4450 et seq. and section 19955 et seq., . . . reflect a legislative sensitivity to the hardships suffered by those afflicted with a wide range of physical disabilities.  They are part of an expanding legislative effort to attain 'the commendable goal of total integration of handicapped persons into the mainstream of society . . .'  ( <u>In re Marriage of Carney</u>, <u>supra</u>, 24 Cal.3d 725, 740.)  The Legislature has declared '[i]t is the policy of this state to encourage and enable disabled persons to participate fully in the social and economic life of the state. . . .'  (Gov. Code, § 19230, subd.(a).)  These legislative responses are designed to lessen their entire burden, by guaranteeing equal and full access to public buildings, facilities, and accommodations, without jeopardizing their safety."

With respect to public buildings constructed with private funds, the Legislature has defined "public accommodations or facilities" as "a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers."  (Health & Saf. Code, § 19955.) "Hospitals" is further defined in the same statute as "includ[ing], but is not limited to, hospitals, nursing homes, and convalescent homes."  This statutory scheme also specifically covers "[a]ll . . . offices of physicians and surgeons . . . ."  (Health & Saf. Code, § 19955.5.)

In 65 Ops.Cal.Atty.Gen. 72, 73-75 (1982), we examined the language of Health and Safety Code section 19955, pointing out that hospitals have the characteristic of "being public," being "generally available to the public," and "made continuously available to the general public and whose economic viability cannot survive without their being so available."

In <u>O'Connor</u> v. <u>Village Green Owners Assn.</u> (1983) 33 Cal.3d 790, 796, the Supreme Court observed that with respect to the Unruh Civil Rights Act, hospitals "are clearly business establishments, to the extent that they employ a vast array of persons, care for an extensive physical plant and charge substantial fees to those who use the facilities."

We are not presented here, however, with whether a blind person has a statutory right of access to medical facilities -- that is acknowledged.  The issue is whether such person, while in the facilities, has a statutory right to be accompanied by a guide dog.

In <u>Lyons</u> v. <u>Grether</u> (Va. 1977) 239 S.E.2d 103, a blind person filed suit against a physician who refused to treat her (she had an appointment for the treatment of a specified infection) unless her guide dog was removed from the waiting room of his medical office.  The Virginia statute was in all material respects identical to sections 54.1 and 54.2.  The court concluded:

"We are persuaded by plaintiff's argument as applied to the facts alleged in this case.  It fairly appears from the face of the motion for judgment that defendant's office was a place to which certain members of the public were invited by prior appointment to receive certain treatment at certain scheduled hours. . . .

Accordingly, . . . we hold that, under the facts alleged here, defendant's office was within the intendment of the White Cane Act . . . ." (Id.)

We believe that medical facilities, including hospitals, clinics and physician's offices, would normally be considered "places to which the general public is invited" if not also "places of public accommodation."[2] As we have previously concluded and has been recognized by the courts, medical facilities may generally be characterized as business establishments dependent upon members of the public for their economic viability. The critical issue is whether all or some members of the general public are invited to the facility for business, professional, or other services. Another way of stating the issue is whether all members of the general public are invited under all or some conditions. (See In re Lundgren (1987) 189 Cal.App.3d 381, 388.)

For purposes of sections 54.1 and 54.2, it is irrelevant that some groups of the general public are excluded from the facility. A claim that the facility is unavailable to healthy persons would not, for example, render the statutory scheme inapplicable. Similarly, the facility would not be exempt if the invitation were extended only to those members of the general public who have a particular disease or were referred to the facility by another physician. (See Club Ramon, Inc. v. United States (4th Cir. 1961) 296 F.2d 837, 840; Lerner v. Schectman (D.Minn. 1964) 228 F.Supp. 354, 355-358; Lerner v. Club Wander In, Inc. (D.Mass. 1959) 174 F.Supp. 731, 732-733; 65 Ops.Cal.Atty.Gen. 106, 109-110 (1982).)

In sum, medical facilities are normally made available to all or some members of the general public for business and professional services. For these reasons an able-bodied person may enter the facilities; under sections 54.1 and 54.2, a blind person may be accompanied by a guide dog within the facilities for the same purposes. The legislation was intended to grant equality of right, and we so construe it.[3]

Not all parts of a medical facility, however, may be open to the general public. (See People v. Brown (1979) 88 Cal.App.3d 283, 290; People v. Schad (1971) 21 Cal.App.3d 201, 209; People v. Kemick (1971) 17 Cal.App.3d 419, 421-422.) In Perino v. St. Vincent's Medical Center (Sup.Ct. 1986) 502 N.Y.S.2d 921, a New York trial court considered whether a blind person accompanied by a guide dog could be denied access to a hospital delivery room when his wife gave birth to their child. The New York statute was similar to sections 54.1 and 54.2, except that it apparently did not provide for "conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." The court concluded:

"A delivery room of a hospital, as well as the labor room and maternity ward, are not places to which the general public is normally invited or permitted, as those places are commonly perceived. Normally, they are restricted to the expectant mother

---

2. While the term "places of public accommodation" has been found applicable in a variety of contexts (see Roberts v. United States Jaycees (1984) 468 U.S. 609, 615; United States v. Medical Society of South Carolina (D. S.C. 1969) 298 F. Supp. 145, 152; Vidrich v. Vic Tanny Intern., Inc. (1980) 102 Mich.App.230 [301 N.W. 2d 482, 484]; 65 Ops.Cal.Atty.Gen. 72, supra, 72-73), "other places to which the general public is invited" would seemingly have an even broader meaning.

3. As previously mentioned, hospitals, clinics, and physicians' offices must be built so as to be accessible to handicapped persons (Health & Saf. Code, §§ 19955, 19955.5); we do not believe that the Legislature intended for something less "equal" with respect to blind persons with guide dogs.

and father and the attending physicians and nurses.  They are not considered public places, not only because social custom and practice do not accept them as such, but also because reasonable health measures dictate that they not be open to the public.  Ordinarily, labor, delivery, and nursery units of hospitals are closed units, and the hospital may set appropriate restrictions governing entry into these units.  (10 N.Y.C.R.R. § 405.8(A)(4).)  It cannot be [said] that the general public is normally or customarily invited or permitted to be present at or to view the delivery of a child at a hospital, surgery, or the like."  (Id., at p. 922.)

Whether a blind person may be accompanied by a guide dog in a particular area of a medical facility would depend upon the individual circumstances.

Finally, we note the language of section 54.1 allowing restrictions on access and use of public places where "established by law, or state or federal regulation, and applicable alike to all persons."  The only reported case discussing this limited exclusion is Marsh v. Edwards Theatres Circuit, Inc., supra, 64 Cal.App.3d 881, 890-891, in which the Court of Appeal concluded that local fire regulations applicable to all persons could form the basis for excluding access to and use of public places by handicapped persons.

The Marsh court relied upon cases interpreting the Unruh Civil Rights Act in reaching its conclusion.  This legislative enactment is broadly worded but allows the exclusion or denial of services where "conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, or national origin."  Courts have upheld exclusions from this statutory scheme where the particular person's conduct was objectionable (see Koire v. Metro Car Wash (1985) 40 Cal.3d 24, 30-32; O'Connor v. Village Green Owners Assn., supra, 30 Cal.3d 721, 741; In re Cox (1970) 3 Cal.3d 205, 217) and in unique situations involving peculiar types of facilities or services (see Koire v. Metro Car Wash, supra, 40 Cal.3d 24, 31 [suggesting that a child may be excluded from an adult bookstore]; Wynn v. Monterey Club (1980) 111 Cal.App.3d 789, 796-798 [compulsive gambler denied entrance to a gambling club]).  Each situation must be examined individually to determine the applicability of this limited exception.

In answer to the question presented, therefore, we conclude that medical facilities, including hospitals, clinics and physicians' offices, are places where a blind person has a statutory right to be accompanied by a guide dog to the extent of providing access equal to that of all or some members of the general public.

* * * * *